IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CAMERON MCCRARY, SHELDON | § | |
| WILLIAMS, ASHLEY WASHINGTON, | § | |
| SHANIQUA RISCHER, JONATHAN | § | |
| DAVIS, PABLO LUNA, JAMES | § | |
| TAYLOR, AND KERRY BILLINGS, | § | CIVIL ACTION NO. 3:20-cv-01264-P |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| MIKE BLOOMBERG 2020 INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, TO TRANSFER OR STAY, AND BRIEF IN SUPPORT

Under Federal Rule of Civil Procedure 12(b)(6), Mike Bloomberg 2020 Inc. ("Defendant" or the "Campaign") moves to dismiss with prejudice all claims pleaded by Plaintiffs Cameron McCrary, Sheldon Williams, Ashley Washington, Shaniqua Rischer, Jonathan Davis, Pablo Luna, James Taylor, and Kerry Billings (collectively, "Plaintiffs") and submits this brief in support.[1]  Alternatively, the Campaign requests that the Court transfer or stay this case under the first-to-file doctrine.

---

[1] *See* N.D. Tex. L.R. 5.1.

## Table of Contents

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

III.  ARGUMENTS AND AUTHORITIES ........................................................................ 4

      A.   The Court should grant the Campaign's motion to dismiss because
           Plaintiffs fail to state a claim upon which relief may be granted .......................... 4

           1.   Legal Standard .......................................................................................... 4

           2.   The terms of the parties' At-Will Agreement govern the
                employment relationship and therefore require dismissal of the
                claims that the parties entered into an oral agreement. .............................. 5

           3.   The At-Will Agreements preclude Plaintiffs' promissory-estoppel
                claims. ..................................................................................................... 6

           4.   The Court should dismiss Plaintiffs' fraud claim because it is
                barred by the economic-loss rule and because Plaintiffs cannot
                plausibly plead justifiable reliance .............................................................. 7

                a.   The economic-loss rule precludes Plaintiffs' fraud claim. ............. 7

                b.   Plaintiffs cannot plausibly plead that they justifiably relied on the
                     alleged representations about the nature of their employment in
                     light of the written At-Will Agreement. ......................................... 9

           5.   Dismissal of Plaintiffs' FLSA claim is proper because the FLSA
                does not apply to the Campaign. .............................................................. 11

                a.   The Campaign is not a covered enterprise under the FLSA. ......... 12

                     i.   The Campaign was not conducted for a "business
                          purpose." ......................................................................... 12

                     ii.  Plaintiffs allege no facts to support their conclusory
                          assertion that the Campaign "engage[d] in commerce." .... 15

                b.   Plaintiffs are not covered individuals. .......................................... 16

      B.   Alternatively, the Court should apply the first-to-file doctrine and should
           transfer this case to the Southern District of New York or stay it pending
           the outcome of an earlier-filed and substantially-related case. ............................ 19

           1.   Legal Standard ....................................................................................... 19

           2.   This case substantially overlaps with the first-filed case. .......................... 19

IV.   CONCLUSION ................................................................................................. 22

i

## Table of Authorities

Page(s)

**Cases**

*Am. Home Mort. Serv., Inc. v. Triad Guar. Ins. Corp.*,
714 F. Supp. 2d 648 (N.D. Tex. 2010) ........................................................................ 19

*Anderson v. Hearts with Hope Found.*,
713 F. App'x 278 (5th Cir. 2017) ............................................................................... 12

*Anyafulu v. EquiCredit Corp. of Am.*,
664 F. App'x 410 (5th Cir. 2016) ............................................................................. 7, 8

*Areizaga v. ADW Corp.*, 3:14-CV-2899-P,
2015 WL 13567554 (N.D. Tex. May 19, 2015) ........................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 4

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
590 S.W.3d 471 (Tex. 2019) ............................................................................ 9, 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 4

*Bowrin v. Catholic Guardian Soc.*,
417 F. Supp. 2d 449 (S.D.N.Y. 2006) ....................................................................... 13

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) .......................................................................... 17–18, 21

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
445 S.W.3d 716 (Tex. 2014) ........................................................................................ 7

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .............................................................................................. 17–18

*City of Clinton v. Pilgrim's Pride Corp.*,
654 F. Supp. 2d 536 (N.D. Tex. 2009) ........................................................................ 6

*Collins v. Allied Pharmacy Mgmt., Inc.*,
871 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1994, no writ ............................... 7

*Collins-Laster v. Openroad Mgmt., Inc.*,
2019 WL 3769961 (W.D. Tex. Aug. 9, 2019) ..................................................... 15–16

*David J. Sacks, P.C. v. Haden*,
   266 S.W.3d 447 (Tex. 2008) ............................................................... 5

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) .............................................................. 1

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
   112 S.W.3d 854 (Tex. App.—Houston [14th Dist.] 2003, pet. denied ..................... 10

*DT Apt. Grp., LP v. CWCapital, LLC*,
   2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)................................................. 10, 11

*Dunlop v. Indus. Am. Corp.*,
   516 F.2d 498 (5th Cir. 1975) ............................................................. 17

*Duran v. Wong*, 4:11-CV-3323,
   2012 WL 5351220 (S.D. Tex. Oct. 23, 2012) .............................................. 17

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000) ............................................................... 6–7

*Garza-Selcer v. 1600 Pacific Subtenant, LLC*,
   2016 WL 11474103 (N.D. Tex. Aug. 30, 2016) ........................................... 6

*In re Amerijet Int'l, Inc.*,
   785 F.3d 967 (5th Cir. 2015) ............................................................. 21

*Jacobs v. N.Y. Foundling Hosp.*,
   577 F.3d 93 (2d Cir. 2009) ............................................................... 12

*Jhaver v. Zapata Off-Shore Co.*,
   903 F.2d 381 (5th Cir. 1990) ............................................................. 6

*Jim Walter Homes, Inc. v. Reed*,
   711 S.W.2d 617 (Tex. 1986) ............................................................. 8, 9

*Johnson v. Trump for President, Inc.*,
   2019 WL 2492122 (M.D. Fla. June 14, 2019) ........................................... 14

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
   885 F. Supp. 1169 (S.D. Ind. 1995) ..................................................... 13, 18

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018) ............................................................. 10, 11

*KCCR, Inc. v. Brunner*,
   2010 WL 4236868 (S.D. Tex. Oct. 21, 2010)............................................. 21

iii

*Kirschbaum v. Walling*,
  316 U.S. 517 (1942) ............................................................................................. 17

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
  393 F. Supp. 2d 1282 (M.D. Fla. 2005) ........................................................ 13, 18

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
  955 F. Supp. 2d 50 (D.D.C. 2013) ...................................................................... 13

*Mercedes-Benz, LLC v. Carduco*,
  583 S.W.3d 553 (Tex. 2019) ........................................................................ 10, 11

*Miller v. CitiMortgage, Inc.*,
  970 F. Supp. 2d 568 (N.D. Tex. 2013) ................................................................. 7

*Nat'l Prop. Holdings, L.P. v. Westergren*,
  453 S.W.3d 419 (Tex. 2015) ........................................................................ 10, 11

*Nikolaeva v. Home Attendant Servs. of Hyde Park*,
  2018 U.S. Dist. LEXIS 197155 (E.D.N.Y. Nov. 16, 2018) .................................. 13

*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) ............................................................................... 14

*Overstreet v. N. Shore Corp.*,
  318 U.S. 125 (1943) ............................................................................................. 17

*Payne v. Universal Recovery, Inc*,
  2011 WL 7415414 (N.D. Tex. Dec. 7, 2011) ...................................................... 16

*Reagor v. Okmulgee Cty. Family Res. Ctr., Inc.*,
  501 F. App'x 805 (10th Cir. 2012) ................................................................ 13, 18

*Reece v. Howmet Corp.*,
  639 F. App'x 245 (5th Cir. Apr. 21, 2016) .......................................................... 14

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ................................................................................. 4

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ......................................................................... 19, 21

*Shakeri v. ADT Sec. Servs., Inc.*,
  816 F3d 283 (5th Cir. 2016) ................................................................................... 7

iv

*Simms v. Jones,*
　879 F. Supp. 2d 595 (N.D. Tex. 2012) .................................................................. 8

*Stephens v. The Clipper, Inc.,*
　1992 WL 163659 (N.D. Tex. Mar. 24, 1992) ........................................................ 5

*Stripling v. Jordan Prod. Co.,*
　234 F.3d 863 (5th Cir. 2000) .............................................................................. 5–6

*Sw. Bell Tel. Co. v. DeLanney,*
　809 S.W.2d 493 (Tex. 1991) ............................................................................. 7, 8

*Thomas v. New Leaders for New Sch.,*
　278 F.R.D. 347 (E.D. La. 2011) .......................................................................... 14

*Tony & Susan Alamo Found. v. Sec'y of Labor,*
　471 U.S. 290 (1985) ....................................................................................... 12–13

*Tuchman v. DSC Commc'ns Corp.,*
　14 F.3d 1061 (5th Cir. 1994) ................................................................................ 7

*Walch v. Adjutant General's Dep't of Tex.,*
　533 F.3d 289 (5th Cir. 2008) ................................................................................ 1

*Walling v. Jacksonville Paper Co.,*
　317 U.S. 564 (1943) ............................................................................................ 17

*Williams v. WMX Techs., Inc.,*
　112 F.3d 175 (5th Cir. 1997) ................................................................................ 7

*Wirtz v. Columbian Mut. Life Ins. Co.,*
　380 F.2d 903 (6th Cir. 1967) .............................................................................. 12

**Statutes**

9 U.S.C. § 1 ........................................................................................................... 17

26 U.S.C. § 527 ..................................................................................................... 14

29 U.S.C. § 202 ....................................................................................................... 2

29 U.S.C. § 203 ........................................................................................... 11, 13, 15

29 U.S.C. § 206 ............................................................................................. 2, 11, 16

29 U.S.C. § 207 ............................................................................................. 2, 11, 16

29 U.S.C. § 215 ........................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 4

N.D. Tex. L.R. 5.1 ......................................................................................cover page

**Regulations**

29 C.F.R. § 779.214 .............................................................................................. 12

**Other Authorities**

S. Rep. No. 1744 .................................................................................................... 15

S. Rep. No. 93-1357 .............................................................................................. 14

U.S. Dep't of Labor, Opinion Letter FLSA2008-8,
    2008 WL 4906282 ....................................................................................... 14–15

## I.      INTRODUCTION

In January or February of this year, each Plaintiff executed a written employment agreement (the "At-Will Agreement") with the Campaign confirming that either the Plaintiffs or the Campaign *"may terminate [Plaintiffs'] employment at any time, with or without notice and with or without cause, for any reason or no reason." See* At-Will Agreements at 1, attached as Exs. A–H (exhibits omitted) (emphasis added) (App. 002, 017, 032, 047, 062, 077, 092, 107).[2] The At-Will Agreement further provided that no statement varying the terms of the At-Will Agreement was enforceable unless in a writing signed by an officer of the Campaign. *See id.* at 2 (App. 003, 018, 033, 048, 063, 078, 093, 108).

Notwithstanding the explicit terms of the At-Will Agreement, Plaintiffs seek to bring claims against the Campaign for terminating their employment in accordance with those terms. Plaintiffs' First Amended Complaint (the "FAC") now asserts claims for breach of contract, promissory estoppel, and fraud.  Plaintiffs also allege that the Campaign misclassified them as exempt under the Fair Labor Standards Act ("FLSA") and failed to pay them overtime for the short time they each were employed by the Campaign.  The Court should dismiss each of Plaintiffs' four claims with prejudice for the following reasons.

*First*, as to the breach-of-contract claims, the parties' written At-Will Agreement governs the employment relationship and unambiguously provides that Plaintiffs' employment was at will. Plaintiffs may not rely on alleged oral representations to contradict the written terms of the At-

---

[2] The Court may consider "documents incorporated into the complaint by reference" when ruling on a motion to dismiss. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (holding that two documents attached to motion to dismiss could be considered in ruling on that motion because they "were sufficiently referenced in the complaint").  Plaintiffs specifically refer to the parties' written At-Will Agreement. *See, e.g.*, FAC ¶ 23 [Dkt. No. 10].  Accordingly, the Court should consider the At-Will Agreement in deciding this motion and should not convert it into a summary-judgment motion.

Will Agreement.  In light of the written At-Will Agreement directly contradicting their assertions, any amendment of Plaintiffs' breach-of-oral-contract claim would be futile, and the Court thus should dismiss that claim with prejudice.

*Second*, Plaintiffs' promissory-estoppel claim similarly cannot succeed because the parties have entered into a valid agreement that governs Plaintiffs' employment.  And, because amendment would be futile, the Court should dismiss the promissory-estoppel claim with prejudice.

*Third*, Plaintiffs' fraud claim is barred as a matter of law because the harm Plaintiffs claim consists of the allegedly wrongful termination of the written At-Will Agreement.  Under Texas law, the economic-loss doctrine bars any such claim.  In addition, Plaintiffs do not plausibly plead reasonable reliance—an essential element of their fraud claim—as a matter of law in light of their acknowledgement that the At-Will Agreement Plaintiffs received "were inconsistent with the multiple oral promises and guarantees that [the Campaign] made."  FAC ¶ 23 [Dkt. No. 10]. Dismissal with prejudice therefore is proper.

*Finally*, Plaintiffs' FLSA claim fails at the outset because the FLSA does not apply to political campaign organizations like the Campaign as a matter of law.  Congress enacted the FLSA to regulate labor conditions in "industries engaged in commerce or in the production of goods for commerce," so as to prevent "unfair method[s] of competition" and employment practices that "burden[ ] commerce and the free flow of goods in commerce" and "interfere[ ] with the orderly and fair marketing of goods in commerce."  29 U.S.C. § 202.  The statute prescribes minimum wages and overtime requirements for such "industries," and makes it unlawful for any person to "ship, deliver, or sell in commerce, . . . any goods" produced in violation of those requirements. 29 U.S.C. §§ 206, 207, 215.

The Campaign is not such an enterprise.  It is a tax-exempt, nonprofit political advocacy organization.  The Campaign did not engage in any "industry" or the "marketing of goods in commerce," nor engage in "competition" with any businesses; it was formed for the sole purpose of advocating for the election of Michael Bloomberg to the Presidency.  Plaintiffs, who were field organizers and other organizing employees of the Campaign's various state operations, were responsible for carrying that message to individual voters at the most grassroots level, such as door-to-door canvassing, working phone banks to call prospective voters, and recruiting volunteers.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Original Petition in state court on April 8, 2020.  On May 15, 2020, the Campaign timely removed to this Court on the basis of diversity jurisdiction.  *See* Notice of Removal [Dkt. No. 1].  After the Campaign moved to dismiss the Original Petition [Dkt. No. 7], and upon agreement of the parties [Dkt. 8], Plaintiffs filed their First Amended Complaint to add an FLSA claim and to remove a claim under the Texas Payday Act [Dkt. No. 10].

Plaintiffs allege that they worked as paid staffers in Dallas for Mike Bloomberg's 2020 campaign.  *See* FAC ¶ 13.  They claim that the Campaign promised them during the interview process "that the positions for which they were applying were guaranteed through November 2020 … ."  *Id.* ¶ 19.  They further allege that they were later told that they would continue to be paid through November even if the Campaign no longer employed them through that date.  *Id.* ¶ 25.  Contrary to the purported promises, Plaintiffs admit that their written offer letters "were inconsistent with the multiple oral promises and guarantees that [the Campaign] made" and "describe[d] the employment relationship as 'at-will.'"  *Id.* ¶ 23.  Plaintiffs executed the written offer letters confirming their at-will employment status.  *See* At-Will Agreement at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).

Mike Bloomberg announced on March 4, 2020 that he was ending his campaign, and the Campaign subsequently terminated Plaintiffs' employment.  *See* FAC ¶ 26.  Plaintiffs then sued the Campaign, claiming, *inter alia*, that it breached oral contracts with Plaintiffs to employ and pay them through November, engaged in fraud, and violated the FLSA.  *See id.* ¶¶ 35–67.  Plaintiffs seek lost wages and benefits, among other damages.  *See id.* ¶¶ 29, 55, 56, 42, 43, Prayer.

### III.     ARGUMENTS AND AUTHORITIES

**A.     The Court should grant the Campaign's motion to dismiss because Plaintiffs fail to state a claim upon which relief may be granted.**

1.     <u>Legal Standard</u>

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).  A claim is plausible where the plaintiff pleads sufficient factual content to support the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The factual allegations in the complaint must be enough to raise a right to relief above the speculative level.  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

2.      The terms of the parties' At-Will Agreement govern the employment relationship
and therefore require dismissal of the claims that the parties entered into an oral
agreement.

Plaintiffs cannot pursue a claim for breach of an oral contract because they admit that their

At-Will Agreements contradict the terms of the alleged oral promises.[3]  *See* FAC ¶ 23; *see also*

At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).

Although Plaintiffs allege that the Campaign "promised" them that they were guaranteed positions

and salaries "through November 2020," they admit that their written offer letters state that they are

at-will employees.  *See* FAC ¶¶ 19, 23, 46, 47, 53; At-Will Agreement at 1, attached as Exs. A–H

(App. 002, 017, 032, 047, 062, 077, 092, 107).  Furthermore, the At-Will Agreements specifically

state that upon termination, "no further payments from [the Campaign] to you will be due."  At-

Will Agreement at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).

Under Texas law, Plaintiffs may not enforce an alleged oral contract that directly

contradicts the parties' written agreement.  *See, e.g*., *David J. Sacks, P.C. v. Haden*, 266 S.W.3d

447, 450–51 (Tex. 2008) (determining that evidence of oral agreement capping attorney's fees at

$10,000 was inadmissible to alter written agreement that contained no cap because "[a]n

unambiguous contract will be enforced as written, and parol evidence will not be received for the

purpose of creating an ambiguity or to give the contract a meaning different from that which its

language imports"); *Stephens v. The Clipper, Inc*., No. No. 3–91–1392, 1992 WL 163659, at *5

(N.D. Tex. Mar. 24, 1992) (dismissing breach-of-oral-contract claim in part because the plaintiff

could not introduce oral representations to vary or contradict the terms of the written agreement).

Furthermore, the parties' written At-Will Agreement expressly states that "[n]o statement varying

any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a

---

[3] Although McCrary purports to allege two breach-of-contract claims, *see* FAC ¶¶ 45–57, both
claims fail for the same reasons, so this motion addresses them together.

5

duly authorized officer of [Defendant]."  Accordingly, Plaintiffs cannot now claim that they were not at-will employees.  *See* FAC ¶ 23 (alleging, for example, that Plaintiffs were offered and accepted employment "through November").

Simply put, the written At-Will Agreements—which provide that Plaintiffs were at-will employees and that Plaintiffs were not entitled to salary payments after termination—governs the employment relationship, and Plaintiffs cannot state a claim for breach of oral contract to the contrary as a matter of law.  And because the written At-Will Agreements make amendment of the breach-of-contract claims futile, dismissal should be with prejudice.  *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (determining that amendment would be futile where "[t]he amended complaint would fail to state a claim upon which relief could be granted").

### 3.  The At-Will Agreements preclude Plaintiffs' promissory-estoppel claims.

The existence of the At-Will Agreements precludes a claim for promissory estoppel.  As the Fifth Circuit has made clear, "[u]nder Texas law, a contract comprising the disputed promise precludes recovery under promissory estoppel."  *See Jhaver v. Zapata Off-Shore Co*., 903 F.2d 381, 385 (5th Cir. 1990).  In accordance with this mandate, courts routinely dismiss promissory-estoppel claims where the plaintiff pleads that a contract exists.  *See, e.g.*, *Garza-Selcer v. 1600 Pacific Subtenant, LLC*, No. 3:15-CV-03791-N, 2016 WL 11474103, at *4 (N.D. Tex. Aug. 30, 2016) (dismissing promissory-estoppel claim because plaintiff alleged the existence of an express contract); *Areizaga v. ADW Corp*., 3:14-CV-2899-P, 2015 WL 13567554, at *2 (N.D. Tex. May 19, 2015) (dismissing promissory-estoppel claim because, "where a party alleges a valid contract governing the dispute at issue, Texas law precludes recovery under promissory estoppel"); *City of Clinton v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009) (dismissing promissory-estoppel claims in part because an express agreement covered the subject matter); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking,

when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . .").  Indeed, "promissory estoppel may not be applied to recover reliance damages when there is a valid contract terminable at will."  *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no writ). Plaintiffs acknowledges that they entered into express agreements.  FAC ¶ 23.  Accordingly, they cannot state a claim for promissory estoppel, and dismissal with prejudice is proper.

    4.    <u>The Court should dismiss Plaintiffs' fraud claim because it is barred by the economic-loss rule and because Plaintiffs cannot plausibly plead justifiable reliance.[4]</u>

    a.    The economic-loss rule precludes Plaintiffs' fraud claim.

Plaintiffs cannot state a fraud claim as a matter of Texas law because of the economic-loss rule, "which generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.'" *Anyafulu v. EquiCredit Corp. of Am.*, 664 F. App'x 410, 413 (5th Cir. 2016) (quoting *Shakeri v. ADT Sec. Servs., Inc.*, 816 F3d 283, 292 (5th Cir. 2016)); *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).  Thus, "if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Sw. Bell Tel. Co. v. DeLanney*,

---

[4] In addition to failing on substantive grounds, Plaintiffs have not satisfied Rule 9(b)'s heightened pleading standards.  It is well established that "[p]leading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175,177 (5th Cir. 1997) (second alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)); *see also Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) (determining that "vague allegations as to the who, what, when, where, and why . . . are not sufficient to plead a claim of fraud or fraudulent inducement with the particularity that Rule 9(b) requires").  Despite that clear dictate, Plaintiffs make no attempt to meet these requirements because they fail to plead the "identity of the person making the" alleged misrepresentation or the time or place of the purported misrepresentation.

809 S.W.2d 493, 494 (Tex. 1991); *see also, e.g.*, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617,

618 (Tex. 1986) ("The nature of the injury most often determines which duty or duties are

breached.").  Even if Plaintiffs had stated a claim for breach of contract, which they did not, merely

alleging a breach of contract is not enough for a fraud claim.

In *Anyafulu*, for example, the plaintiff claimed that the defendants promised her that they

would not foreclose on her home while she sought a loan modification.  *See* 664 F. App'x at 413.

She later sued for fraud and fraudulent misrepresentation when the defendants accelerated the

terms of her loan and began foreclosure proceedings following her failure to timely pay her

mortgage.  *See id.*  The Fifth Circuit held that "liability would only arise if [defendants'] conduct

constituted breach of the parties' loan agreement"; therefore, "the district court properly concluded

that her fraudulent misrepresentation claims are barred by the economic loss rule because the

alleged loss complained of is the subject matter of the loan agreement, or contract, between the

parties." *Id.*

Similarly, in *Simms v. Jones*, the Northern District of Texas dismissed a plaintiff's

fraudulent-concealment claims because they were barred by the economic-loss rule.  *See* 879 F.

Supp. 2d 595, 599–600 (N.D. Tex. 2012).  The plaintiffs alleged that the defendants fraudulently

concealed that the plaintiffs' seats for the Super Bowl were in a location with an obstructed view.

*Id.*  The court concluded that because "the duties alleged [we]re owed only by virtue of the

contractual relationship . . . and [p]laintiffs' alleged injuries arise only from that contract," the

plaintiffs' claims were barred by the economic-loss rule.  *Id.* at 600.

Here, the economic-loss doctrine bars Plaintiffs' fraud claims because the claimed damages

arise from the Campaign's alleged failure to perform under an agreement (*i.e.*, "liability would

only arise if [the Campaign's] conduct constituted a breach of the parties' . . . agreement").

*Anyafulu*, 664 F. App'x at 413; *see also Delanney*, 809 S.W.2d at 495 (holding that economic-loss

rule barred tort claim because the plaintiff "clearly sought to recover the benefit of his bargain with [the defendant]"); *Jim Walter Homes, Inc.*, 711 S.W.2d at 618 (economic-loss rule barred tort recovery for a breach of the contract). Specifically, Plaintiffs allege that the Campaign made false statements regarding their employment—which they acknowledge is the subject of an agreement. FAC ¶¶ 23, 64. Plaintiffs seek lost wages and health-insurance benefits as a result of the Campaign's alleged failure to employ or pay them through November 2020. *See, e.g.*, *id.* ¶ 23 (recognizing that Plaintiffs signed offer letters (the At-Will Agreements) related to their employment with the Campaign that confirmed the at-will status of their employment); *id.* ¶¶ 29–30 (referring to the "obvious loss of income and benefits," including "health insurance"). Because Plaintiffs seek recovery of amounts they claim are owed to them under an agreement, the Court should dismiss Plaintiffs' fraud claim with prejudice as barred by the economic-loss rule.

> b.    Plaintiffs cannot plausibly plead that they justifiably relied on the alleged representations about the nature of their employment in light of the written At-Will Agreement.

In addition to running afoul of the economic-loss doctrine, Plaintiffs' fraud claim also cannot succeed as a matter of Texas law because an essential element of that claim—justifiable reliance—is missing. To state a fraud claim, Plaintiffs must allege facts to support the following elements: "(1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff *justifiably relied on the representation*, which caused the plaintiff injury." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (emphasis added and internal quotation marks and citation omitted). As set forth below, because Plaintiffs cannot plausibly allege facts to establish justifiable reliance, the Court should dismiss their fraud claim as a matter of law.

Courts routinely hold that reliance on an oral statement that contradicts a written agreement is not justifiable as a matter of law. *See, e.g., DT Apt. Grp., LP v. CWCapital, LLC*, No. 3:12–CV–0437–D, 2012 WL 6693192, at *9 (N.D. Tex. Dec. 26, 2012) (dismissing fraudulent-inducement claim, which also has a justifiable-reliance element, because "plaintiffs have not plausibly pleaded justifiable reliance" because "'reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law'" (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see also Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) ("A party to a written contract *cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms*." (emphasis added)); *Barrow-Shaver Res. Co.*, 590 S.W.3d at 499; *Mercedes-Benz, LLC v. Carduco*, 583 S.W.3d 553, 558 (Tex. 2019); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658–59 (Tex. 2018).

For example, in *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, the Texas Supreme Court addressed an oil-and-gas drilling company's claim that Carrizo Oil & Gas, Inc., another oil-and-gas company, committed fraud by orally representing that it would not withhold its consent to allow the drilling company to assign its interest in a contract and later refusing to consent to the assignment. 590 S.W.3d at 497. Carrizo Oil & Gas, Inc. had insisted on deleting language in the contract that provided that it "shall not be unreasonably with[o]ld" its consent, but the drilling company nonetheless claimed that Carrizo Oil & Gas, Inc. orally represented three separate times that it would consent to an assignment. *Id.* The Texas Supreme Court held that the drilling company could not reasonably rely on the oral representations in light of the language in the contract and therefore held that the driller's fraud claim failed as a matter of law. *See id.* at 499–500, 502.

10

That reasoning applies here. The plain language of the parties' At-Will Agreements confirms that Plaintiffs' employment is "at-will." *See* At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107). Plaintiffs' allegation that they "reasonably relied" on the Campaign's alleged promise that they would be employed "through November 2020" is contradicted by the plain language of the At-Will Agreements, *see id.*, which Plaintiffs acknowledge in their complaint. *See* FAC ¶ 23. Accordingly, Plaintiffs fail to and cannot plausibly plead justifiable reliance, and the Court should dismiss their fraudulent-inducement claim as a matter of law. *See, e.g.*, *DT Apt. Grp., LP*, 2012 WL 6693192, at \*9; *Mercedes-Benz, LLC*, 583 S.W.3d at 558; *Barrow-Shaver Res Co.*, 590 S.W.3d at 499; *JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 658–59; *Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424.

> 5.   <u>Dismissal of Plaintiffs' FLSA claim is proper because the FLSA does not apply to the Campaign.</u>

Plaintiffs cannot state an FLSA claim as a matter of law because (1) the Campaign is not a covered enterprise subject to the FLSA and (2) Plaintiffs are not subject to individual coverage under that statute. The FLSA extends only to certain commercial enterprises that do business, and that do so at a certain scale, and also to employees of non-covered enterprises who nevertheless individually engage in such commerce. 29 U.S.C. §§ 203(r), 203(s), 206(a). Neither the Campaign nor its employees engaged in any "commerce" with a "business purpose"; the Campaign was not a business and its employees had no products or services to buy or sell. Its mission was not to earn a profit but to elect a candidate, and Plaintiffs' responsibilities were to advocate, to spread ideas, to share a political philosophy, and to persuade voters. The FLSA simply does not cover political campaigns, and Plaintiffs' FLSA claim should therefore be dismissed with prejudice.

      a.     The Campaign is not a covered enterprise under the FLSA.

          i.     The Campaign was not conducted for a "business purpose."

At the very threshold, the FLSA simply does not apply to organizations that lack a business purpose—the buying and selling of goods or services. The statute defines a covered enterprise as the sum of "related activities performed (either through unified operation or common control) by any person or persons for a common *business purpose* . . . ." 29 U.S.C. §203(r)(1) (emphasis added). As a result, nonprofit organizations, founded for some purpose other than to conduct business, are not subject to the FLSA, except to the extent that they engage in activities that "compete in the marketplace with ordinary commercial enterprises." 29 C.F.R. § 779.214; *see also Anderson v. Hearts with Hope Found.*, 713 F. App'x 278, 280 (5th Cir. 2017) (per curiam) (nonprofit organizations "are generally exempt" from enterprise coverage); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009) ("Generally, non-profit organizations that do not 'engage in ordinary commercial activities' . . . operate without a 'business purpose' and therefore are not enterprises"); *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967) (noting that "a company's nonprofit activities do not fall within the 'common business' requirement").

Thus, for example, in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292 (1985), the defendant was a nonprofit religious enterprise that, in addition to significant charitable work, derived income from service stations, retail clothing and grocery stores, and candy production and distribution, manufacturing, and other activities. The Supreme Court held the Foundation's activities to be subject to the FLSA only to the extent that they "serve the general public in competition with ordinary commercial enterprises." *Id*. at 299. Paying "substandard wages" in those commercial activities would give the Foundation an unfair advantage as compared to other service stations, grocery stores, and other commercial businesses that had to pay workers

the statutory minimum wage and overtime, and that unfair competition warranted inclusion of the Foundation's commercial activities (and therefore the employees who worked specifically in those commercial businesses) within the scope of the FLSA.  *Id.*  The Court went on to note, however, that because the FLSA's requirements extend only to "commercial activities undertaken with a 'business purpose,'" the statute would have "no impact on petitioners' own evangelical activities or on individuals engaged in volunteer work for other religious organizations."  *Id*. at 305; *see also Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013) ("In determining whether a non-profit entity operates with a business purpose, courts examine 'whether the non-profit is primarily engaging in competition in the public with commercial enterprises'"); *Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*, 501 F. App'x 805, 810 (10th Cir. 2012) ("Generally, activities of nonprofits 'are not considered to be conducted for a common business purpose unless they engage in commercial activity.'" (quoting *Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 459 (S.D.N.Y. 2006))).[5]

Plaintiffs do not allege, nor could they allege, that the Campaign engaged in "business," had a "business purpose," or "compete[d]" with any "ordinary commercial enterprises."  It did not operate any grocery stores or retail clothing shops.  It existed solely to advocate on behalf of Mike

---

[5] Many other courts have similarly excluded non-profit organizations from enterprise coverage where the organization does not compete with ordinary businesses.  *See, e.g. Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG) (RER), 2018 U.S. Dist. LEXIS 197155, at *7 (E.D.N.Y. Nov. 16, 2018) (relevant inquiry in enterprise analysis is whether the organization is in competition with "ordinary commercial enterprises"); *Reagor*, 501 F. App'x at 809 ("But the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises..."); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005) ("Thus, the test is an 'economic reality test,' where the focus is on whether 'the enterprise is primarily engaged in competition in the public with ordinary commercial enterprises.'") *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995) ("Unless it engages in commercial activities in competition with private entrepreneurs or qualifies as one of the organization[s] listed in 29 U.S.C. § 203(r)(2), a non-profit charitable organization is not an 'enterprise' under §203(r) because it is not conducted for a 'business purpose.'").

Bloomberg's candidacy for president.  Like any advocacy organization, its stock in trade was not commercial goods or services but expression, ideas, a core First-Amendment-protected effort to persuade voters, and nothing more.  To the extent the Campaign "competed" at all, it competed with other political campaigns for attention to and endorsement of Mr. Bloomberg's ideas and policy proposals, not with any commercial enterprise.  *See, e.g.*, *Johnson v. Trump for President, Inc.*, No. 19-cv-475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) (rejecting enterprise coverage for a political campaign, and questioning whether a campaign could ever be a covered enterprise because of a lack of "business purpose").

Indeed, federal law specifically recognizes that political campaigns are not conducted for a "business purpose."  The Campaign was organized as a political organization under Section 527 of the Internal Revenue Code, 26 U.S.C. §527.[6]  That section establishes political organizations as tax-exempt with respect to their activity "influencing or attempting to influence the selection, nomination, election, or appointment of any individual" to public office, including the Presidency.  26 U.S.C. § 527(e)(1), (e)(2).  Congress adopted this exemption because it recognized that "political activity (including the financing of political activity) as such ***is not a trade or business*** which is appropriately subject to tax."  S. Rep. No. 93-1357 (1974) (emphasis added); *see also* U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282, at *1 ("Enterprise coverage

_____

[6] Copies of the Campaign's Certificate of Incorporation, filed with the Secretary of State of the State of Delaware, and Statement of Organization, filed with the Federal Election Commission ("FEC"), are attached as Exhibits I and J (App. 121–24, 121–29) .  The Court may take judicial notice of these documents in conjunction with this Rule 12(b)(6) motion to dismiss because they are matters of public record.  *See, e.g.*, *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Reece v. Howmet Corp.*, 639 F. App'x 245, 245 n.1 (5th Cir. Apr. 21, 2016) (judicially noticing records from Secretary of State website); *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 349 n.5 (E.D. La. 2011) (taking judicial notice of the fact that an organization is registered as a non-profit corporation with the Secretary of State).

… typically does not extend to the eleemosynary . . . or similar activities of [nonprofit] organizations . . . where such activities are not in substantial competition with other businesses").

Lacking a business purpose, charitable institutions are excluded from FLSA coverage.  As the Senate Committee Report on the 1961 amendments explained in discussing the "common business purpose" requirement:

> [the] definition would not include eleemosynary, religious, or educational organizations not operated for profit. The key word in the definition which supports this conclusion is the word "business." Activities of organizations for the type referred to, if they are not operated for profit, are not activities performed for a "business" purpose.

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960).  The Campaign acted with no more of a business purpose than any tax-exempt organization, and therefore falls outside the statute.

ii.     Plaintiffs allege no facts to support their conclusory assertion that the Campaign "engage[d] in commerce."

Further, even organizations that qualify as "enterprises"—that is, pursuing a "common business purpose" in "compet[ition] . . . with ordinary commercial enterprises"—still fall outside the FLSA unless they also "engage in commerce," which the statute defines as having employees who are directly engaged in commerce or handle material that has moved in commerce, and having gross annual sales or business done exceeding $500,000.  29 U.S.C. § 203(s)(1)(A).  The Campaign had no such employees, as described further in subpart b below.  In any case, Plaintiffs do not sufficiently allege that the Campaign is "engaged in commerce."

Plaintiffs allege in conclusory fashion that the Campaign "was an employer engaged in commerce within the meaning of the FLSA."  FAC ¶ 37.  Crucially, however, Plaintiffs provide no facts that would support this *ipse dixit* conclusion.  As the Western District of Texas recently noted, "[n]umerous courts in this circuit have found that such allegations fail to state a claim under the FLSA."  *Collins-Laster v. Openroad Mgmt., Inc.*, A-18-CV-00120-LY, 2019 WL 3769961, at

15

*3 (W.D. Tex. Aug. 9, 2019) (citing cases).  For example, in *Payne v. Universal Recovery, Inc.*, this Court determined that conclusory allegations that the defendant "was an enterprise engaged in interstate commerce" and "regularly owned and operated businesses engaged in commerce" were "nothing more than a formulaic recitation of the elements of a cause of action." 2011 WL 7415414, at *5 (N.D. Tex. Dec. 7, 2011), *report and recommendation adopted*, 2012 WL 593483 (N.D. Tex. Feb. 17, 2012).  Simply put, "[i]n the absence of any specific facts to support [such] conclusory allegations, Plaintiffs have failed to sufficiently plead enterprise coverage." *Id.*

So too here. Plaintiffs have wholly failed to allege that the Campaign engaged in commerce and is an "enterprise" subject to the FLSA. Accordingly, the FLSA claim should be dismissed.

> b.    Plaintiffs are not covered individuals.

Plaintiffs' alternative route to FLSA coverage, through the "individual coverage" provision, requires that they "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a) (minimum wage), 207(a)(1) (overtime).  Plaintiffs have no hope of making that showing, because they do not contend (nor could they) that they were engaged in "the production of goods," and as a matter of law they were not engaged in "commerce."

Just as the FLSA's enterprise coverage provisions extend only to entities conducting commercial activity with a "business purpose" in competition with other businesses, the individual provisions extend coverage only to employees who are "engaged in commerce."  None of the Plaintiffs are alleged to have had such job duties, and the FLSA therefore does not apply to them.

In an apparent effort to satisfy the individual-coverage requirements for campaign employees whose predominant work was entirely within a single state, the Complaint alleges that the Plaintiffs used telephones, which were shipped to them from other states, to communicate with the Campaign in New York, and that they used laptops and "literature, signs, merchandise, office supplies, and other items that were shipped to them across state lines."  FAC ¶ 34.  Of course, "the

mere use of goods that have traveled in interstate commerce is by itself insufficient to establish individual coverage under the FLSA." *Duran v. Wong*, 4:11-CV-3323, 2012 WL 5351220, at *3 (S.D. Tex. Oct. 23, 2012). And Plaintiffs' alleged interstate communications cannot satisfy the FLSA's requirement that the individual be "engaged in commerce," because the indisputable purpose of the communications was to advance the campaign, not to conduct business. For example, Plaintiffs allege that their jobs included "working phone banks to call prospective voters." *Id.* ¶ 32. Taking that allegation as true for these purposes, none of those calls was "commercial"; it was work performed in the course of providing political advocacy for a candidate, and that non-commercial activity falls outside the scope of the FLSA. Plaintiffs do not allege any facts to suggest otherwise.

Congress's limitation of covered employees to those "engaged in commerce," rather than those whose work activities "affect" or "involve" commerce, has long been interpreted to mean that "Congress did not choose to exert its power to the full." *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 128 (1943); *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 500 (5th Cir. 1975) ("[T]he 'engaged in commerce' language was far short of the reach of federal power under the Commerce Clause.").[7] The Supreme Court has similarly interpreted the phrase in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which uses both the "engaged in commerce" phrase in describing exceptions from the Act, and "involving commerce" in describing the reach of the Act. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("[T]he general words 'in commerce' and the

---

[7] *See also Kirschbaum v. Walling*, 316 U.S. 517, 522-23 (1942) ("The history of the [FLSA] leaves no doubt that Congress chose not to enter areas which it might have occupied. . . . [T]he scope of the Act is not coextensive with the limits of the power of Congress over commerce."); *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) ("In this connection we cannot be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states. Moreover as we stated in [*Kirschbaum Co.*], Congress did not exercise in this Act the full scope of the commerce power.").

specific phrase 'engaged in commerce' are understood to have a more limited reach" than the terms

"affecting" or "involving" commerce.).  An incidental or passing effect on commerce, accordingly,

is not enough; Plaintiffs must show that they are directly engaged in commerce.  As the court

explained in *Joles v. Johnson County Youth Service Bureau, Inc*., 885 F. Supp. 1169, 1178 (S.D.

Ind. 1995): "For an employee to be 'engaged in commerce' she must be either directly participating

in the actual movement of persons or things in interstate commerce or doing work directly

supporting the movement of goods in interstate commerce."  Political advocacy does not come

close to meeting that definition.

For these reasons, where facilities of interstate commerce are used to further a non-

commercial mission, the FLSA does not apply.  In *Kitchings*, for example, the plaintiffs were

"houseparents" who cared for abused or neglected children at a non-profit center.  393 F. Supp. 2d

at 1285–86.  Their work was performed intrastate, and their only use of interstate communications

was accessing the Internet to assist the children with homework assignments.  *Id*. at 1286.  The

court rejected their claim to individual FLSA coverage, because their use of the Internet for non-

commercial purposes to assist them in their charitable work was not sufficiently commercial.  *Id*.

at 1292.  Similarly, in *Reagor*, the court held that the plaintiff, a worker at a domestic violence

shelter, could not establish individual coverage through her work in helping the shelter's residents

obtain or upgrade cellular telephone service, because she "provided that help as part of the

charitable activities of [the center], not as a competitor in the cellular telephone business."  501 F.

App'x at 810.

The same reasoning applies here: any interstate calls, emails, or other communications

were entirely to further the non-commercial activities of the Campaign.  Simply put, Plaintiffs'

efforts to persuade voters to favor Mr. Bloomberg's candidacy fall outside the FLSA's individual

coverage provisions.  Plaintiffs' FLSA claim should therefore be dismissed.

18

**B.**     **Alternatively, the Court should apply the first-to-file doctrine and should transfer this case to the Southern District of New York or stay it pending the outcome of an earlier-filed and substantially-related case.**

1.     Legal Standard

The first-to-file doctrine applies "when related cases are pending before two federal courts," and provides that "the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The doctrine is "grounded in principles of comity . . . . The federal courts have long recognized that . . . courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each others' affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

The doctrine does not require that the parties or the issues be identical; instead, it requires that there be "substantial overlap" in the issues and parties. *Id.* If the court in the second-filed case determines that there substantial overlap between the two suits, "it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed," *Cadle Co.*, 174 F.3d at 605, and it should stay the second-filed case or transfer it to the first-filed court. *See id.* (second-filed court should transfer action to first-filed court); *Am. Home Mort. Serv., Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 653 (N.D. Tex. 2010) (staying second-filed case under first-to-file doctrine).

2.     This case substantially overlaps with the first-filed case.

On March 23, 2020, former Campaign employees filed a separate lawsuit against the Campaign in the Southern District of New York. *See Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489 (pending in the United States District Court for the Southern District of New

York).[8]  In *Wood*, the plaintiffs purport to sue on behalf of a nationwide class of former Campaign employees and allege that the Campaign violated the FLSA and fraudulently induced them to accept employment based on the Campaign's representation that the Campaign would continue to employ them until the general election.  *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 58–59, 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 188–89, 204–06).

Plaintiffs filed their Original Petition on April 8, 2020—several weeks after the plaintiffs in *Wood* filed their lawsuit.  *See* Pet. at 1 [Dkt. No. 1-2].  Both lawsuits allege FLSA, fraud, and promissory-estoppel claims.  *Compare* FAC at 8–9, 12 [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 204–06)..  Although Plaintiffs' current pleading includes two breach-of-contract claims not included in *Wood*, the underlying factual allegations in this lawsuit are the same as the alleged facts in *Wood*.  The plaintiffs in both cases allege that the Campaign misclassified them as exempt from the FLSA and failed to pay them overtime for work in excess of 40 hours per week, allegedly "promised" them employment until the November 2020 general election, and discharged them in March 2020.  *Compare* FAC at 9–13 [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 58–59, 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 188–89, 204–06).  This case and *Wood* thus meet the "substantial overlap" standard on the face of the pleadings.  *Compare* FAC [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. (S.D.N.Y.

---

[8] Another group of employees then filed another class action in the same court.  *See Sklair et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02495 (pending in the United States District Court for the Southern District of New York).  Both *Wood* and *Sklair* were filed before Plaintiffs filed this lawsuit, but this motion focuses on *Wood* because it was the first-filed case.  *Sklair* was initially assigned to a different district court judge in the Southern District of New York and subsequentally transferred to the judge presiding over *Wood* (Hon. Laura T. Swain) because *Wood* was first-filed.

Mar. 30, 2020), attached as Ex. K (App. 130–214).  The subject matter is the same because both actions seek overtime, lost wages, and other compensation based on the plaintiffs' alleged discharge before the November 2020 general election.  The defendant is the same in both actions. In addition, the plaintiffs in *Wood* assert FLSA claims on behalf of a putative collective that ostensibly would include Plaintiffs if the court certifies the proposed collective in that case.[9] Transferring or staying this case thus will "avoid the waste of duplication, . . . avoid rulings which may trench upon the authority of sister courts, and . . . avoid piecemeal resolution of issues that call for a uniform result."  *Cadle Co.* 174 F.3d at 603.

The fact that this case contains two breach-of-contract claims not included in *Wood* does not counsel against applying the first-to-file doctrine because, as the Fifth Circuit has made clear, the issues need not be identical.  *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) ("Under this first-to-file rule, the cases need not be identical; rather, the crucial inquiry is one of substantial overlap." (citation and internal quotation marks omitted)); *Save Power Ltd.*, 121 F.3d at 950 ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues." (internal quotation marks and citation omitted)); *see also, e.g.*, *KCCR, Inc. v. Brunner*, No. H–10–cv–01263, 2010 WL 4236868, at *3 (S.D. Tex. Oct. 21, 2010) ("[S]ubstantial overlap does not require that the issues or parties be identical, but merely that the two actions involve closely related questions, common subject matter or an overlap of the core issues.").

---

[9] By seeking to apply the first-to-file doctrine, the Campaign does not concede that the Campaign, or Plaintiffs in this case or *Wood* are subject to coverage under the FLSA, or that the Plaintiffs are similarly situated to each other or to the Plaintiffs in *Wood*.  *See Wood* at Dkt. 94. Nor does the Campaign concede that field organizers and other organizing employees could satisfy the requirements of Fed. R. Civ. P. 23.  *See Wood* at Dkt. 111; *Sklair* at Dkt. 21.  But because the claims and subject matter in both cases substantially overlap, the first-to-file doctrine applies.

Because the cases "involve closely related questions, common subject matter [and] an overlap of the core issues," *KCCR, Inc.*, 2010 WL 4236868, at *3, the Court should transfer this case to the Southern District of New York or should stay it pending that court's decisions in *Wood*.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and dismissal is proper under Rule 12(b)(6).  Because amendment would be futile, the Court should dismiss the claims with prejudice.  And, should the Court reach the issue, it should transfer any remaining claims to the United States District Court for the Southern District of New York or stay this case pending the resolution of the earlier-filed *Wood* case.

Dated:  July 9, 2020.


Respectfully submitted,

*/s/ J. Meghan McCaig*
Greg W. Curry
State Bar No. 05270300
Greg.Curry@tklaw.com

J. Meghan McCaig
State Bar No. 24070083
Meghan.McCaig@tklaw.com

Dina McKenney
State Bar No. 24092809
Dina.McKenney@tklaw.com

Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (facsimile)

ATTORNEYS FOR DEFENDANT