IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAMERON MCCRARY, SCHELDON WILLIAMS, ASHLEY WASHINGTON, SHANIQUA RISCHER, JONATHAN DAVIS, PABLO LUNA, JAMES TAYLOR, AND KERRY BILLINGS, | § § § § § | CIVIL ACTION NO. 3:20-cv-01264-X |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| MIKE BLOOMBERG 2020 INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OR, ALTERNATIVELY, TO TRANSFER OR STAY, AND BRIEF IN SUPPORT

Under Federal Rule of Civil Procedure 12(b)(6), Mike Bloomberg 2020 Inc. (the "Campaign") moves to dismiss with prejudice all claims pleaded by Plaintiffs Cameron McCrary, Scheldon Williams, Ashley Washington, Shaniqua Rischer, Jonathan Davis, Pablo Luna, James Taylor, and Kerry Billings (collectively, "Plaintiffs") and submits this brief in support.[1] Alternatively, the Campaign requests that the Court transfer or stay this case under the first-to-file doctrine.

---

[1] *See* N.D. Tex. L.R. 5.1.

**Table of Contents**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III.    ARGUMENTS AND AUTHORITIES ................................................................ 4

        A.      The Court should grant the Campaign's motion to dismiss because
                Plaintiffs fail to state a claim upon which relief may be granted ............ 4

                1.      Legal Standard ....................................................................... 4

                2.      The Court should dismiss Plaintiffs' FLSA claim because the
                        FLSA does not apply to the Campaign. .................................... 5

                        a.      The Campaign is not a covered enterprise under the FLSA. ........... 6

                                i.      The Campaign was not conducted for a "business
                                        purpose." ......................................................... 6

                                ii.     Plaintiffs failed to allege facts to establish that the
                                        Campaign engaged in commerce. ........................ 9

                        b.      Plaintiffs are not covered individuals. ......................... 11

                3.      The Court should dismiss Plaintiffs' breach-of-contract claims ............. 14

                        a.      Plaintiffs' claim for breach of a promise of future employment fails
                                because it contradicts the express language of the At-Will
                                Agreement. ...................................................... 14

                        b.      Plaintiffs' claim for breach of a promise to pay them through
                                November 2020 fails for lack of consideration ............... 15

                4.      Plaintiffs' fraud claim violates the economic-loss doctrine and fails
                        because Plaintiffs cannot plausibly plead justifiable reliance .................. 17

                        a.      The economic-loss rule precludes Plaintiffs' fraud claim. ............ 17

                        b.      Plaintiffs cannot plausibly plead that they justifiably relied on the
                                alleged representations in light of the written At-Will
                                Agreement. ...................................................... 19

                5.      The At-Will Agreements preclude Plaintiffs' promissory-estoppel
                        claims. ................................................................................ 20

        B.      Alternatively, the Court should apply the first-to-file doctrine and transfer
                or stay this case. ............................................................................... 22

                1.      Legal Standard ................................................................... 22

                2.      This case substantially overlaps with the first-filed case. ......... 23

IV.     CONCLUSION ............................................................................................... 25

## Table of Authorities

### Cases

*Am. Home Mort. Serv., Inc. v. Triad Guar. Ins. Corp.*,
    714 F. Supp. 2d 648 (N.D. Tex. 2010) ................................................................. 23

*Anderson v. Hearts with Hope Found.*,
    713 F. App'x 278 (5th Cir. 2017) ......................................................................... 6

*Anyafulu v. EquiCredit Corp. of Am.*,
    664 F. App'x 410 (5th Cir. 2016) ................................................................... 17, 18

*Areizaga v. ADW Corp.*,
    No. 3:14-CV-2899-P, 2015 WL 13567554 (N.D. Tex. May 19, 2015) ................... 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
    590 S.W.3d 471 (Tex. 2019) ........................................................................... 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 4

*BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*,
    No. 14-06-00986, 2008 WL 1991738 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet.
    denied) .......................................................................................................... 21, 22

*Bowrin v. Catholic Guardian Soc.*,
    417 F. Supp. 2d 449 (S.D.N.Y. 2006) ..................................................................... 7

*BP Am. Prod'n Co. v. Zaffirini*,
    419 S.W.3d 485 (Tex. App.—San Antonio 2013, pet. denied) ............................... 2

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ..................................................................... 22, 23, 24

*Castranova v. Teknekron Infoswitch, Inc.*,
    No. Civ. A. 3:00-CV-0361, 2003 WL 22143793 (N.D. Tex. Aug. 18, 2003) ..... 16, 17

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014) ................................................................................ 17

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ....................................................................................... 12, 13

*City of Clinton v. Pilgrim's Pride Corp.*,
    654 F. Supp. 2d 536 (N.D. Tex. 2009) .................................................................. 21

*Collins v. Allied Pharmacy Mgmt., Inc.*,
   871 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1994, no writ) ........................................ 21

*David J. Sacks, P.C. v. Haden*,
   266 S.W.3d 447 (Tex. 2008)................................................................................................ 14

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ............................................................................................... 1

*DT Apt. Grp., LP v. CWCapital, LLC*,
   No. 3:12–CV–0437–D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)........................... 19, 20

*Dunlop v. Indus. Am. Corp.*,
   516 F.2d 498 (5th Cir. 1975) ............................................................................................. 12

*Duran v. Wong*, 4:11-CV-3323,
   2012 WL 5351220 (S.D. Tex. Oct. 23, 2012) ..................................................................... 11

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000)................................................................................................ 21

*Garza-Selcer v. 1600 Pacific Subtenant, LLC*,
   No. 3:15-CV-03791-N, 2016 WL 11474103 (N.D. Tex. Aug. 30, 2016) .............................. 21

*Haase v. Glazner*,
   62 S.W.3d 795 (Tex. 2001)................................................................................................. 2

*Hubbard v. Shankle*,
   138 S.W.3d 474 (Tex. App.—Fort Worth 2004, pet. denied) ................................................ 15

*In re Amerijet Int'l, Inc.*,
   785 F.3d 967 (5th Cir. 2015) ............................................................................................. 24

*In re Endeavour Highrise LP*,
   432 B.R. 583 (S.D. Tex. Bankr. 2010) ........................................................................... 16, 17

*Jacobs v. N.Y. Foundling Hosp.*,
   577 F.3d 93 (2d Cir. 2009) ................................................................................................. 6

*Jhaver v. Zapata Off-Shore Co.*,
   903 F.2d 381 (5th Cir. 1990) ............................................................................................. 21

*Jim Walter Homes, Inc. v. Reed*,
   711 S.W.2d 617 (Tex. 1986)......................................................................................... 17, 18

*Johnson v. Trump for President, Inc.*,
   No. 19-cv-475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) ............................................... 8

*Johnston v. Kruse*,
   261 S.W.3d 895 (Tex. App.—Dallas 2008, no pet.)......................................................... 16, 17

iii

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
    885 F. Supp. 1169 (S.D. Ind. 1995) ................................................................... 7, 12

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018) ............................................................................. 19, 20

*KCCR, Inc. v. Brunner*,
    No. H–10–cv–01263, 2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) ...................... 25

*Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm'l Mktg. Co. W.L.L.*,
    No. H-07-2684, 2008 WL 5114962 (S.D. Tex. Dec. 3, 2008) .......................... 21, 22

*Kirschbaum v. Walling*,
    316 U.S. 517 (1942) ............................................................................................. 12

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
    393 F. Supp. 2d 1282 (M.D. Fla. 2005) ...................................................... 7, 10, 13

*Locke v. St. Augustine's Episcopal Church*,
    690 F. Supp. 2d 77 (E.D.N.Y. 2010) ..................................................................... 9

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
    955 F. Supp. 2d 50 (D.D.C. 2013) ........................................................................ 6

*Mercedes-Benz, LLC v. Carduco*,
    583 S.W.3d 553 (Tex. 2019) ............................................................................. 19, 20

*Miller v. CitiMortgage, Inc.*,
    970 F. Supp. 2d 568 (N.D. Tex. 2013) ................................................................ 16

*Nat'l Prop. Holdings, L.P. v. Westergren*,
    453 S.W.3d 419 (Tex. 2015) ............................................................................. 19, 20

*Nikolaeva v. Home Attendant Servs. of Hyde Park*,
    No. 15-cv-6977 (NGG) (RER), 2018 U.S. Dist. LEXIS 197155 (E.D.N.Y. Nov. 16, 2018) ..... 7

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ............................................................................... 8

*Overstreet v. N. Shore Corp.*,
    318 U.S. 125 (1943) ............................................................................................ 12

*Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*,
    501 F. App'x 805 (10th Cir. 2012) .................................................................. 7, 13

*Reece v. Howmet Corp.*,
    639 F. App'x 245 (5th Cir. Apr. 21, 2016) ........................................................... 8

*Reliable Consultants, Inc. v. Earle*,
    517 F.3d 738 (5th Cir. 2008) ............................................................................... 4

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ................................................................. 22, 25

*Shakeri v. ADT Sec. Servs., Inc.*,
  816 F3d 283 (5th Cir. 2016) ........................................................................ 17

*Simms v. Jones*,
  879 F. Supp. 2d 595 (N.D. Tex. 2012) ......................................................... 18

*Stephens v. The Clipper, Inc.*,
  No. 3–91–1392, 1992 WL 163659 (N.D. Tex. Mar. 24, 1992) ................... 14

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) ....................................................................... 14

*Sw. Bell Tel. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991) ......................................................................... 17

*Thomas v. New Leaders for New Sch.*,
  278 F.R.D. 347 (E.D. La. 2011) ..................................................................... 8

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
  471 U.S. 290 (1985) ......................................................................................... 6

*Vanegas v. Am. Energy Servs.*,
  302 S.W.3d 299 (Tex. 2009) ......................................................................... 16

*Walch v. Adjutant General's Dep't of Tex.*,
  533 F.3d 289 (5th Cir. 2008) .......................................................................... 1

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) ....................................................................................... 12

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................ 17

*Wirtz v. Columbian Mut. Life Ins. Co.*,
  380 F.2d 903 (6th Cir. 1967) .......................................................................... 6

**Statutes**

9 U.S.C. § 1 ...................................................................................................... 12

26 U.S.C. § 527 .................................................................................................. 8

26 U.S.C. § 527(c)(3) .................................................................................... 7, 10

26 U.S.C. § 527(e)(1), (e)(2) ............................................................................ 8

29 U.S.C. § 202 .................................................................................................. 5

29 U.S.C. § 203(r) ................................................................................................ 5, 7

29 U.S.C. § 203(s) ................................................................................................ 5, 9

29 U.S.C. § 206 .................................................................................................. 5, 10

29 U.S.C. § 207 ....................................................................................................... 5

29 U.S.C. § 215 ....................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... i, 3, 4

Fed. R. Civ. P. 23 ................................................................................................... 24

**Regulations**

29 C.F.R. § 1.527-3(e) ........................................................................................... 10

29 C.F.R. § 779.214 ................................................................................................. 6

29 C.F.R. § 779.258 ................................................................................................. 9

**Other Authorities**

N.D. Tex. L.R. 5.1 ..................................................................................................... i

S. Rep. No. 1487 ...................................................................................................... 9

S. Rep. No. 1744 ...................................................................................................... 8

S. Rep. No. 93-1357 ................................................................................................. 8

U.S. Dept. of Labor, Opinion Letter,
     FLSA2008-8, 2008 WL 4906282 .................................................................. 8, 9

## I.       INTRODUCTION

The Campaign formerly employed Plaintiffs as field or regional organizers for Mike Bloomberg's 2020 presidential campaign.  Plaintiffs—who worked at the Campaign's Dallas Field Office—were responsible for carrying the Campaign's message to individual voters at the most grassroots level, such as door-to-door canvassing, working phone banks, and recruiting volunteers.

Plaintiffs allege that the Campaign misclassified them as exempt under the Fair Labor Standards Act ("FLSA") and failed to pay them overtime.  But because the FLSA does not apply to political campaign organizations like the Campaign, dismissal is proper.  The Campaign did not engage in any "industry" or the "production of goods in commerce"; it was formed for the sole purpose of advocating for the election of Michael Bloomberg to the Presidency.

Plaintiffs next seek to bring various state-law claims against the Campaign.  Each Plaintiff executed a written employment agreement (the "At-Will Agreement") with the Campaign confirming that either the Plaintiffs or the Campaign *"may terminate [Plaintiffs'] employment at any time, with or without notice and with or without cause, for any reason or no reason."  See* At-Will Agreements, attached as Exs. A–H (exhibits omitted) (emphasis added) (App. 002, 017, 032, 047, 062, 077, 092, 107).[2]  The At-Will Agreement further provided that upon termination, no other payments would be due, and that no statement varying the terms of the At-Will Agreement was enforceable unless in a writing signed by an officer of the Campaign.  *See id.*

Notwithstanding the explicit terms of the At-Will Agreement, Plaintiffs seek to bring breach-of-contract, promissory-estoppel, and fraud claims against the Campaign for terminating

---

[2] The Court may consider "documents incorporated into the complaint by reference" when ruling on a motion to dismiss.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008). Plaintiffs specifically refer to the parties' written At-Will Agreement.  *See, e.g.*, SAC ¶ 23 [Dkt. No. 10].  Accordingly, the Court should consider the At-Will Agreement in deciding this motion and should not convert it into a summary-judgment motion.

their employment.  The Court should dismiss each of those claims with prejudice.

*First*, as to the breach-of-employment-contract claim, Plaintiffs' contentions that they were orally promised either employment or payment through November 2020 directly contradict the written terms of the At-Will Agreement.  And, to the extent Plaintiffs contend that the alleged "promise" was to pay them—rather than to employ them—through November, such an alleged oral promise lacks consideration.  Any amendment of Plaintiffs' breach-of-oral-contract claim would be futile, and the Court thus should dismiss that claim with prejudice.

*Second*, Plaintiffs' fraud claim is barred as a matter of law because the harm Plaintiffs claim consists of the allegedly wrongful termination of the written At-Will Agreement.[3]  Under Texas law, the economic-loss doctrine bars any such claim.  In addition, Plaintiffs do not plausibly plead reasonable reliance—an essential element of their fraud claim—in light of their acknowledgement that the At-Will Agreement Plaintiffs executed flatly contradicts the alleged oral promises.  *See* SAC ¶ 23 [Dkt. No. 17].  Dismissal with prejudice therefore is proper.

*Third*, Plaintiffs' promissory-estoppel claim similarly cannot succeed because Plaintiffs specifically allege that the parties have entered into a valid agreement that governs Plaintiffs' employment.  *See* SAC ¶ 46.  In addition, because reasonable reliance is an essential element of a promissory-estoppel claim, reliance on any alleged promises of guaranteed employment or guaranteed pay through November 2020 was unreasonable as a matter of law, given that such purported promises contradicted the terms of the At-Will Agreement.  And, because amendment would be futile, the Court should dismiss the promissory-estoppel claim with prejudice.

---

[3] Plaintiffs may argue that the economic-loss doctrine does not bar their fraud claim because that doctrine does not apply to fraudulent-inducement claims.  Notably, however, Plaintiffs did not plead a fraudulent-inducement claim, which has different elements than a fraud claim; they pleaded a fraud claim.  *See* SAC ¶¶ 71–74 [Dkt. No. 17]; *see also, e.g.*, *BP Am. Prod'n Co. v. Zaffirini*, 419 S.W.3d 485, 505 (Tex. App.—San Antonio 2013, pet. denied) (noting that, compared to a fraud claim, a claim for "[f]raudulent inducement also requires an additional element: 'the existence of a contract'" (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).

Plaintiffs have made three attempts to plausibly plead their claims and again fall short. Dismissal with prejudice thus is proper.

In the unlikely event the Court does not dismiss the complaint outright, the Court should transfer the case to the Southern District of New York or stay proceedings under the first-to-file doctrine because the instant case substantially overlaps with a separate lawsuit filed by former Campaign employees in that district first.  Transferring or staying this action would streamline proceedings and avoid duplication and potentially inconsistent results.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiffs filed their Original Petition in state court on April 8, 2020.  On May 15, 2020, the Campaign timely removed to this Court on the basis of diversity jurisdiction.  *See* Notice of Removal [Dkt. No. 1].  After the Campaign moved to dismiss the Original Petition [Dkt. No. 7], and upon agreement of the parties [Dkt. 8], Plaintiffs filed their First Amended Complaint [Dkt. No. 10].  Following the Campaign's motion to dismiss Plaintiffs' First Amended Complaint, Plaintiffs again amended, filing a Second Amended Complaint to address issues raised in the Campaign's motion.  *See* SAC [Dkt. No. 17].

Plaintiffs allege that they worked as paid staffers in Dallas for Mike Bloomberg's 2020 presidential campaign.  *See* SAC ¶ 13.  They contend that "[t]heir job duties *almost exclusively* consisted of door-to-door canvassing (in assigned neighborhoods, based on a script), working phone banks to call prospective voters (from assigned lists, and again, working from a script), and recruiting volunteers."  *Id.* ¶ 32 (emphasis added).  Despite the intrastate nature of their activities, Plaintiffs contend that they used the telephone and Internet to communicate with Campaign employees in New York.  *See id.* ¶ 34.  They claim to have worked 68 hours per week without

---

[4] For purposes of its motion to dismiss, the Campaign assumes the truth of Plaintiffs' factual allegations, as required by Rule 12(b)(6).  However, the Campaign otherwise denies and will vigorously contest Plaintiffs' allegations.

having been paid overtime.  *See id.* ¶ 32.

Plaintiffs further allege that unidentified "[C]ampaign officials and managers" promised them during the interview process "that the positions for which they were applying were guaranteed through November 2020 … ."  *Id.* ¶ 19.  They contend that unspecified "Campaign officials and managers" later told them that the Campaign would continue to pay them through November even if the Campaign no longer employed them through that date.  *Id.* ¶ 25.  Contrary to the purported promises, Plaintiffs admit that their written offer letters "were inconsistent with the multiple oral promises and guarantees that [the Campaign] made" and "describe[d] the employment relationship as 'at-will.'"  *Id.* ¶ 23.  Plaintiffs executed the written offer letters confirming their at-will employment status.  *See* At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).

Mike Bloomberg announced on March 4, 2020 that he was ending his campaign, and the Campaign subsequently terminated Plaintiffs' employment as provided for in the At-Will Agreements.  *See* SAC ¶ 26.  Plaintiffs then sued the Campaign, claiming that it breached oral contracts with Plaintiffs to employ and/or pay them through November, engaged in fraud, and violated the FLSA.  *See id.* ¶¶ 35–67.  Plaintiffs seek lost wages and benefits, among other damages.  *See id.* ¶¶ 29, 38, 42, 55, 57, 62, 66–67, Prayer.

## III.    ARGUMENTS AND AUTHORITIES

**A.    The Court should grant the Campaign's motion to dismiss because Plaintiffs fail to state a claim upon which relief may be granted.**

### 1.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).  A claim is plausible where the plaintiff pleads sufficient factual content to support the reasonable inference that the

defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*

2.   The Court should dismiss Plaintiffs' FLSA claim because the FLSA does not apply to the Campaign.

Plaintiffs cannot state an FLSA claim as a matter of law because (1) the Campaign is not a covered enterprise subject to the FLSA and (2) Plaintiffs are not subject to individual coverage under that statute.  The FLSA extends only to certain commercial enterprises that do business at a specified scale and to employees of non-covered enterprises who nevertheless individually engage in such commerce.  29 U.S.C. §§ 203(r), 203(s), 206(a).  Indeed, Congress enacted the FLSA to regulate labor conditions in "industries engaged in commerce or in the production of goods for commerce," so as to prevent "unfair method[s] of competition" and employment practices that "burden[] commerce and the free flow of goods in commerce."  29 U.S.C. § 202.  The statute prescribes minimum wage and overtime requirements for such "industries," and it makes it unlawful for any person to "ship, deliver, or sell in commerce . . . any goods" produced in violation of those requirements.  29 U.S.C. §§ 206, 207, 215.

Neither the Campaign nor its employees engaged in any "commerce" with a "business purpose."  The Campaign's mission was not to earn a profit but to elect a candidate, and Plaintiffs' responsibilities were "almost exclusively" to advocate, to spread ideas, to share a political philosophy, and to persuade voters.  SAC ¶ 32.  The FLSA simply does not cover political campaigns, and Plaintiffs' FLSA claim should therefore be dismissed with prejudice.

5

a.    *The Campaign is not a covered enterprise under the FLSA.*

i.    The Campaign was not conducted for a "business purpose."

At the very threshold, the FLSA simply does not apply to organizations that lack a business purpose—the buying and selling of goods or services.  The statute defines a covered enterprise as the sum of "related activities performed (either through unified operation or common control) by any person or persons for a common *business purpose* . . . ."  29 U.S.C. §203(r)(1) (emphasis added).  As a result, nonprofit organizations, founded for some purpose other than to conduct business, are not subject to the FLSA, except to the extent that they engage in activities that "compete in the marketplace with ordinary commercial enterprises."  29 C.F.R. § 779.214; *see also Anderson v. Hearts with Hope Found.*, 713 F. App'x 278, 280 (5th Cir. 2017) (per curiam) (nonprofit organizations "are generally exempt" from enterprise coverage); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009) ("Generally, non-profit organizations that do not 'engage in ordinary commercial activities' . . . operate without a 'business purpose' and therefore are not enterprises"); *Wirtz v. Columbian Mut. Life Ins. Co*., 380 F.2d 903, 907 (6th Cir. 1967) ("[A] company's nonprofit activities do not fall within the 'common business' requirement.").

Thus, for example, in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292 (1985), the defendant was a nonprofit religious enterprise that, in addition to significant charitable work, derived income from service stations, retail clothing and grocery stores, candy production and distribution, manufacturing, and other activities.  The Supreme Court held the Foundation's activities to be subject to the FLSA only to the extent that they "serve the general public in competition with ordinary commercial enterprises."  *Id*. at 299.  Paying "substandard wages" in those commercial activities would give the Foundation an unfair advantage as compared to other service stations, grocery stores, and other commercial businesses that had to pay workers the statutory minimum wage and overtime, and that unfair competition warranted inclusion of the

6

Foundation's commercial activities (and therefore the employees who worked specifically in those commercial businesses) within the scope of the FLSA.  *Id.*  The Court went on to note, however, that because the FLSA's requirements extend only to "commercial activities undertaken with a 'business purpose,'" the statute would have "no impact on petitioners' own evangelical activities or on individuals engaged in volunteer work for other religious organizations."  *Id.* at 305; *see also Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013) ("In determining whether a non-profit entity operates with a business purpose, courts examine 'whether the non-profit is primarily engaging in competition in the public with commercial enterprises'"); *Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*, 501 F. App'x 805, 810 (10th Cir. 2012) ("Generally, activities of nonprofits 'are not considered to be conducted for a common business purpose unless they engage in commercial activity.'" (quoting *Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 459 (S.D.N.Y. 2006))).[5]

The Campaign did not engage in "business," have a "business purpose," or "compete" with any "ordinary commercial enterprises."  Although it sold merchandise to raise political awareness about Mike Bloomberg's candidacy, revenue from such sales constituted political contributions, not revenue from the sale of goods.[6]  *See* 26 U.S.C. § 527(c)(3).  Notably, Plaintiffs do not allege

---

[5] Many other courts have similarly excluded non-profit organizations from enterprise coverage where the organization does not compete with ordinary businesses.  *See, e.g. Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG) (RER), 2018 U.S. Dist. LEXIS 197155, at *7 (E.D.N.Y. Nov. 16, 2018) (relevant inquiry is whether the organization is in competition with "ordinary commercial enterprises"); *Reagor*, 501 F. App'x at 809 ("[T]he question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises..."); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005) ("[T]he test is an 'economic reality test,' where the focus is on whether 'the enterprise is primarily engaged in competition in the public with ordinary commercial enterprises.'"); *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995) (Absent certain circumstances, "a non-profit charitable organization is not an 'enterprise' under §203(r) . . . .").

[6] The Campaign sold its merchandise at cost and earned no profit from it, as reflected by publicly available filings with the Federal Elections Commission.  *See* Report of Receipts & Disbursements, FEC Form 3P, available at https://docquery.fec.gov/pdf/965/2020022091 86594965/202002209186594965.pdf (last visited Aug. 17, 2020).

that the Campaign's sales of campaign clothing or merchandise was for profit or was intended to compete with others in the marketplace. *See* SAC ¶¶ 40–41. Nor could they; the Campaign existed solely to advocate on behalf of Mike Bloomberg's candidacy. Like any advocacy organization, its stock in trade was not commercial goods or services but expression of ideas, a core First-Amendment-protected effort to persuade voters, and nothing more. To the extent the Campaign "competed" at all, it competed with other political campaigns for attention to and endorsement of Mr. Bloomberg's ideas and policy proposals, not with any commercial enterprise. *See, e.g.*, *Johnson v. Trump for President, Inc.*, No. 19-cv-475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) (rejecting enterprise coverage for a political campaign, and questioning whether a campaign could ever be a covered enterprise because of a lack of "business purpose").

Indeed, federal law specifically recognizes that political campaigns are not conducted for a "business purpose." The Campaign was organized as a political organization under Section 527 of the Internal Revenue Code, 26 U.S.C. §527,[7] which establishes political organizations as tax-exempt with respect to their activity "influencing or attempting to influence the selection, nomination, election, or appointment of any individual" to public office, including the Presidency. 26 U.S.C. § 527(e)(1), (e)(2). Indeed, Congress explicitly recognized that "political activity (***including the financing of political activity***) as such ***is not a trade or business*** which is appropriately subject to tax." S. Rep. No. 93-1357 (1974) (emphasis added); *see also* U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282, at *1 ("Enterprise coverage … typically does not extend to the eleemosynary . . . or similar activities of [nonprofit] organizations

---

[7] Copies of the Campaign's Certificate of Incorporation, filed with the Secretary of State of the State of Delaware, and Statement of Organization, filed with the Federal Election Commission ("FEC"), are attached as Exhibits I and J (App. 121–24, 121–29). The Court may take judicial notice of these documents in conjunction with this Rule 12(b)(6) motion to dismiss because they are matters of public record. *See, e.g.*, *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Reece v. Howmet Corp.*, 639 F. App'x 245, 245 n.1 (5th Cir. Apr. 21, 2016); *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 349 n.5 (E.D. La. 2011).

. . . where such activities are not in substantial competition with other businesses").

Lacking a business purpose, charitable institutions are excluded from FLSA coverage because they do not meet the "business purpose" definition. *See* S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960). "The key word in the definition which supports this conclusion is the word 'business[,]'" and "[a]ctivities of organizations for the type referred to, if they are not operated for profit, are not activities performed for a 'business' purpose." *Id.* The Campaign acted with no more of a business purpose than any tax-exempt organization and thus falls outside the statute.

> ii.   Plaintiffs failed to allege facts to establish that the Campaign engaged in commerce.

Further, even an organization that qualifies as an "enterprise"—that is, pursuing a "common business purpose" in "compet[ition] . . . with ordinary commercial enterprises," which the Campaign does not—still falls outside the FLSA unless it also "engage[s] in commerce," which the statute defines as both (1) having employees who are directly engaged in commerce or handle material that has moved in commerce, and (2) having gross annual sales or business done exceeding $500,000. 29 U.S.C. § 203(s)(1)(A). The Campaign had no such employees, as described below. And, in any case, the Campaign had no "sales" or "business" as a matter of law, so Plaintiffs' attempt to establish enterprise coverage fails for this independent reason.

The terms "gross annual sales or business done," again, refer to the buying and selling of goods and services, "the gross dollar volume of the sales . . . which [the entity] makes, as measured by the price paid by the purchaser for the property or service . . . and the gross dollar volume of any other business activity in which the enterprise engages which can be similarly measured on a dollar basis." 29 C.F.R. § 779.258 (quoting S. Rep. No. 1487, 89th Congress, 2nd session, at 7-8). Thus, the mere receipt of money in excess of $500,000 annually is not sufficient; the revenue must be generated *through commercial activity. See, e.g., Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 89 (E.D.N.Y. 2010) (church's income from charitable contributions

9

is "not included in this calculation," and so is not relevant to enterprise coverage, even though it exceeded $500,000; its "commercial income" did not exceed the threshold); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 n.28 (M.D. Fla. 2005) ("The fact that an eleemosynary organization receives income in the form of fees or gifts does not itself render it a 'for profit' or 'business' enterprise. Obviously, the organization will have expenses which must be offset by revenues from some source."); U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282, at *2 ("[I]t has long been our position that income derived from eleemosynary activity should not be included as sales made or business done.").

The Campaign did not engage in *any* such commercial activity, let alone $500,000 worth. The Campaign accepted contributions from those who purchased merchandise through the Campaign's online store that communicated its political messages.  *See* SAC ¶ 37.  However, those merchandise sales were not "commercial income"; they were non-taxable campaign contributions, as recognized by federal law.  *See* 26 U.S.C. § 527(c)(3) (providing that a political organization's income is exempt from tax to the extent it arises from an "exempt function," which includes "proceeds from the sale of campaign materials, *which are not received in the ordinary course of any trade or business*" (emphasis added)).  Indeed, federal regulations specifically provide that proceeds of campaign merchandise "relate[] to such a political activity [and are therefore exempt] where such items can be identified as relating to distributing political literature or organizing voters to vote for a candidate for public office." 29 C.F.R. § 1.527-3(e).  In short, federal law recognizes that a political campaign's sale of merchandise is related to its political activity and therefore should not be treated as taxable income, as it would be if the Campaign engaged in "commercial activity."  Plaintiffs cannot establish that the Campaign "engaged in commerce" because the revenue generated was not from a commercial activity; dismissal is thus proper.

b.    *Plaintiffs are not covered individuals.*

Plaintiffs' alternative route to FLSA coverage, through the "individual coverage" provision, requires that they "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a) (minimum wage), 207(a)(1) (overtime).  Plaintiffs have no hope of making that showing, because they do not contend (nor could they) that they were engaged in "the production of goods," and as a matter of law they were not engaged in "commerce."

Just as the FLSA's enterprise coverage provisions extend only to entities conducting commercial activity with a "business purpose" in competition with other businesses, the individual provisions extend coverage only to employees who are "engaged in commerce."  Plaintiffs admit that their activities consisted "almost exclusively" of "door-to-door canvassing," "working phone banks to call prospective voters . . . and recruiting volunteers."  SAC ¶ 32.

In an effort to satisfy the individual-coverage requirements for campaign employees whose predominant work was entirely within a single state, the Complaint alleges that the Plaintiffs used telephones, which were shipped to them from other states, to communicate with the Campaign in New York; that they used laptops and "literature, signs, merchandise, office supplies, and other items that were shipped to them across state lines"; and that they "directed potential supporters to [the Campaign's] web page, where they could purchase products made outside of Texas and shipped to Texas."  SAC ¶¶ 34, 36.  But "the mere use of goods that have traveled in interstate commerce is by itself insufficient to establish individual coverage under the FLSA."  *Duran v. Wong*, 4:11-CV-3323, 2012 WL 5351220, at *3 (S.D. Tex. Oct. 23, 2012).  Further, because the indisputable purpose of the communications was to advance the campaign, not to conduct business, Plaintiffs were not "engaged in commerce."  For example, Plaintiffs allege that their jobs included "working phone banks to call prospective voters."  *Id.* ¶ 32.  Taking that allegation as true for these purposes, none of those calls was "commercial"; it was work performed in the course of providing

tax-exempt political advocacy for a candidate, and that non-commercial activity falls outside the scope of the FLSA. Plaintiffs do not allege any facts to suggest otherwise.

Plaintiffs' allegation that they "directed potential supporters to [the Campaign's] web page, where they could purchase products made outside of Texas and shipped to Texas," SAC ¶ 36, does not satisfy the interstate-commerce requirement because, as explained above, the purpose of such merchandise sales was to obtain political contributions, not to conduct business. In short, although Plaintiffs allege that they used the Internet and telephones to communicate with individuals outside of the state, they do not allege facts that plausibly suggest that the use of such interstate communications was to conduct business—as opposed to raise money for a political campaign and to further the Campaign's political purpose. To the extent they communicated across state lines or used products shipped across state lines, it was for the purposes of their "daily job duties," which consisted "almost exclusively" of trying to persuade voters to vote for Mike Bloomberg or trying to persuade others to volunteer for Mike Bloomberg's presidential campaign. SAC ¶¶ 32, 34.

Congress's limitation of covered employees to those "engaged in commerce," rather than those whose work activities "affect" or "involve" commerce, has long been interpreted to mean that "Congress did not choose to exert its power to the full." *Overstreet v. N. Shore Corp*., 318 U.S. 125, 128 (1943); *Dunlop v. Indus. Am. Corp*., 516 F.2d 498, 500 (5th Cir. 1975) ("[T]he 'engaged in commerce' language was far short of the reach of federal power under the Commerce Clause.").[8] The Supreme Court has similarly interpreted the phrase in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which uses both the "engaged in commerce" phrase in describing exceptions from the Act, and "involving commerce" in describing the reach of the Act. *See, e.g*., *Circuit City*

---

[8] *See also Kirschbaum v. Walling*, 316 U.S. 517, 522-23 (1942) (The FLSA's scope "is not coextensive with the limits of the power of Congress over commerce."); *Walling v. Jacksonville Paper Co*., 317 U.S. 564, 570 (1943) ("[W]e cannot be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states.").

*Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("[T]he general words 'in commerce' and the specific phrase 'engaged in commerce' are understood to have a more limited reach" than the terms "affecting" or "involving" commerce.).   An incidental or passing effect on commerce is insufficient; Plaintiffs must have directly engaged in commerce.   "For an employee to be 'engaged in commerce' she must be either directly participating in the actual movement of persons or things in interstate commerce or doing work directly supporting the movement of goods in interstate commerce."   *Joles v. Johnson County Youth Service Bureau, Inc.*, 885 F. Supp. 1169, 1178 (S.D. Ind. 1995).   Political advocacy does not come close to meeting that definition.

For these reasons, where facilities of interstate commerce are used to further a non-commercial mission, the FLSA does not apply.   In *Kitchings*, for example, the plaintiffs were "houseparents" who worked for a non-profit that cared for abused or neglected children.   393 F. Supp. 2d at 1285–86.   They used interstate communications to access the Internet to assist the children with homework assignments.   *Id.* at 1286.   The court rejected their claim to individual FLSA coverage because their use of the Internet for non-commercial purposes to assist them in their charitable work was not sufficiently commercial.   *Id.* at 1292.   Similarly, in *Reagor*, the court held that the plaintiff, a worker at a domestic violence shelter, could not establish individual coverage through her work in helping the shelter's residents obtain or upgrade cellular telephone service, because she "provided that help as part of the charitable activities of [the center], not as a competitor in the cellular telephone business."   501 F. App'x at 810.

The same reasoning applies here: any interstate calls, emails, or other communications were entirely to further the non-commercial activities of the Campaign.   *See, e.g.*, SAC ¶¶ 32, 34. Plaintiffs' efforts to persuade voters to favor Mr. Bloomberg's candidacy fall outside the FLSA's individual coverage provisions.   Plaintiffs' FLSA claim should therefore be dismissed.

13

3.    <u>The Court should dismiss Plaintiffs' breach-of-contract claims.</u>

    a.    *Plaintiffs' claim for breach of a promise of future employment fails because it contradicts the express language of the At-Will Agreement.*

Plaintiffs cannot pursue a breach-of-oral-contract claim premised on an alleged promise of future employment because they expressly admit that their At-Will Agreements contradict the terms of the alleged promise. *See* SAC ¶ 23; *see also* At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107) (admitting that the terms of the At-Will Agreement "*were inconsistent with*" the alleged oral promises (emphasis added)). Although Plaintiffs allege that the Campaign "promised" them that they were guaranteed positions and salaries "through November 2020," they admit that the written offer letters they executed state that they are "at-will" employees. *See* SAC ¶¶ 19, 23, 46, 47, 53; At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107). The At-Will Agreements also specify that upon termination, "no further payments from [the Campaign] to you will be due." At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).

Under Texas law, Plaintiffs may not enforce a prior or contemporaneous alleged oral promise that directly contradicts the parties' written agreement. *See, e.g.*, *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (determining that evidence of oral agreement capping attorney's fees at $10,000 was inadmissible to alter written agreement that contained no cap because "[a]n unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports"); *Stephens v. The Clipper, Inc.*, No. No. 3–91–1392, 1992 WL 163659, at *5 (N.D. Tex. Mar. 24, 1992) (dismissing breach-of-oral-contract claim in part because the plaintiff could not introduce prior or contemporaneous oral representations to vary or contradict the terms of the written agreement). Further, the parties' written At-Will Agreement expressly states that "[n]o statement varying any of the terms of this offer letter shall be enforceable

14

unless set forth in a writing signed by a duly authorized officer of [the Campaign]."  Accordingly, Plaintiffs cannot now claim that they were not at-will employees.  *See* SAC ¶ 23 (alleging, for example, that Plaintiffs were offered and accepted employment "through November").

Simply put, the written At-Will Agreements—which provide that Plaintiffs were at-will employees who were not entitled to salary payments after termination—governs the employment relationship, and Plaintiffs cannot state a claim for breach of oral contract to the contrary as a matter of law.  And because the written At-Will Agreements make amendment of the breach-of-contract claims futile, dismissal should be with prejudice.  *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (determining that amendment would be futile where "[t]he amended complaint would fail to state a claim upon which relief could be granted").

### b.    *Plaintiffs' claim for breach of a promise to pay them through November 2020 fails for lack of consideration.*

Plaintiffs cannot pursue a breach-of-oral-contract claim premised on an alleged promise that the Campaign would pay their salaries through November because the alleged contract fails for lack of consideration.  Plaintiffs claim that when it became clear that Mike Bloomberg may not become the Democratic nominee for President, Campaign officials "began stating that Plaintiffs might not be employed by [the Campaign] going forward, but they would continue to be *paid* by [the Campaign] through November . . . ."  SAC ¶ 25 (emphasis added).  Plaintiffs purport to have "accepted such offer by continuing employment with [the Campaign] until terminated."  *Id.* ¶ 54. Notably absent from Plaintiffs' allegations, however, are any facts showing that the Campaign's alleged promise was contingent on Plaintiffs' continued employment through the end of Mike Bloomberg's presidential campaign or on any other action (or inaction) by Plaintiffs.

The existence of consideration for the alleged oral promise is an essential element of Plaintiffs' breach-of-contract claim.  *See Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.— Fort Worth 2004, pet. denied) ("Consideration is also a fundamental element of a valid contract.").

The SAC purports to describe a unilateral contract, which "is created by the promisor promising a benefit *if the promisee performs.*"  *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (citation and internal quotation marks omitted and emphasis added).  If the employer does not demand anything in return for conferring a purported benefit on an employee, there is no consideration for the alleged contract and, therefore, no claim for breach of contract.  *See, e.g.*, *Johnston v. Kruse*, 261 S.W.3d 895, 899 (Tex. App.—Dallas 2008, no pet.) ("A unilateral contract will be binding if one party makes a promise, treated as an offer, and the promise accepts the offer by performing the acts *the promisor requested*." (emphasis added)); *In re Endeavour Highrise LP*, 432 B.R. 583, 652 (S.D. Tex. Bankr. 2010) (applying Texas law and noting that "[w]hen a unilateral contract is silent as to any act being required of the promise, the agreement is unenforceable"); *Castranova v. Teknekron Infoswitch, Inc.*, No. Civ. A. 3:00-CV-0361, 2003 WL 22143793, at *2 (N.D. Tex. Aug. 18, 2003).  In *Castranova*, the employer had a discretionary bonus system, but the plaintiff claimed that his supervisor told [him he] had a great year" and promised him a $225,000.00 bonus.  *Id.* at *1.  The plaintiff did not allege that the employer required anything in return for the alleged promise; therefore, the Court concluded that the alleged oral contract was unenforceable for lack of consideration.  *See id.* at *2.

Here, Plaintiffs do not allege that the Campaign conditioned the alleged promise to continue to pay them on any action, or inaction, by Plaintiffs.  Instead, they allege that Campaign officials stated that employees "might not be employed by [the Campaign] going forward, but they would continue to be *paid* by [the Campaign] through November . . . ."  SAC ¶ 25 (emphasis added).  Although they purport to have accepted the alleged promise through continued employment, Plaintiffs do not allege that the Campaign required them to remain employed through the end of Mike Bloomberg's presidential campaign or imposed any other condition on the alleged promise.  *See id.* ¶¶ 25, 54.  Accordingly, there was no consideration for the purported promise,

16

rendering the alleged oral contract unenforceable.  *See Johnston*, 261 S.W.3d at 899; *In re Endeavour Highrise LP*, 432 B.R. at 652; *Castranova*, 2003 WL 22143793, at *2.

    4.    <u>Plaintiffs' fraud claim violates the economic-loss doctrine and fails because Plaintiffs cannot plausibly plead justifiable reliance.[9]</u>

    *a.*    *The economic-loss rule precludes Plaintiffs' fraud claim.*

Plaintiffs cannot state a fraud claim as a matter of Texas law because of the economic-loss rule, "which generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.'" *Anyafulu v. EquiCredit Corp. of Am.*, 664 F. App'x 410, 413 (5th Cir. 2016) (quoting *Shakeri v. ADT Sec. Servs., Inc.*, 816 F3d 283, 292 (5th Cir. 2016)); *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).  Thus, "if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *see also, e.g.*, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("The nature of the injury most often determines which duty or duties are breached.").  Even if Plaintiffs had stated a claim for breach of contract, which they did not, merely alleging a breach of contract is not enough for a fraud claim.

In *Anyafulu*, for example, the plaintiff claimed that the defendants promised that they would not foreclose on her home while she sought a loan modification.  *See* 664 F. App'x at 413.  She later sued for fraud and fraudulent misrepresentation when the defendants accelerated the terms of her loan and began foreclosure proceedings.  *See id.*  The Fifth Circuit held that "liability

---

    [9] Plaintiffs also have not satisfied Rule 9(b)'s heightened pleading standards because they fail to plead the "identity of the person making the" alleged misrepresentation.  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175,177 (5th Cir. 1997); *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013).  They merely allege that unidentified "campaign officials and managers" made the alleged misrepresentations.  SAC ¶¶ 19, 64.

would only arise if [defendants'] conduct constituted breach of the parties' loan agreement"; therefore, "the district court properly concluded that her fraudulent misrepresentation claims are barred by the economic loss rule . . . ."  *Id.*

Similarly, in *Simms v. Jones*, the Northern District of Texas dismissed a plaintiff's fraudulent-concealment claims because they were barred by the economic-loss rule.  *See* 879 F. Supp. 2d 595, 599–600 (N.D. Tex. 2012).  The plaintiffs alleged that the defendants fraudulently concealed that the plaintiffs' seats for the Super Bowl were in a location with an obstructed view. *Id.*  Because "the duties alleged [we]re owed only by virtue of the contractual relationship . . . and [p]laintiffs' alleged injuries arise only from that contract," the Court held that the plaintiffs' claims were barred by the economic-loss rule.  *Id.* at 600.

Here, the economic-loss doctrine bars Plaintiffs' fraud claims because the claimed damages arise from the Campaign's alleged failure to perform under an agreement (*i.e.*, "liability would only arise if [the Campaign's] conduct constituted a breach of the parties' . . . agreement"). *Anyafulu*, 664 F. App'x at 413; *see also Delanney*, 809 S.W.2d at 495 (holding that economic-loss rule barred tort claim because the plaintiff "clearly sought to recover the benefit of his bargain with [the defendant]"); *Jim Walter Homes, Inc.*, 711 S.W.2d at 618 (economic-loss rule barred tort recovery for a breach of the contract).  Specifically, Plaintiffs allege that the Campaign made false statements regarding their employment—which they acknowledge is the subject of an agreement. SAC ¶¶ 23, 46.  Plaintiffs seek lost wages and health-insurance benefits as a result of the Campaign's alleged failure to employ or pay them through November 2020.  *See, e.g.*, *id.* ¶ 23 (recognizing that Plaintiffs signed offer letters (the At-Will Agreements) related to their employment with the Campaign that confirmed the at-will status of their employment); *id.* ¶¶ 29–30 (referring to the "obvious loss of income and benefits," including "health insurance").  Because Plaintiffs seek recovery of amounts they claim are owed to them under an agreement, the Court

should dismiss Plaintiffs' fraud claim with prejudice as barred by the economic-loss rule.[10]

        b.        *Plaintiffs cannot plausibly plead that they justifiably relied on the alleged representations in light of the written At-Will Agreement.*

In addition to running afoul of the economic-loss doctrine, Plaintiffs' fraud claim also cannot succeed as a matter of Texas law because an essential element of that claim—justifiable reliance—is missing. To state a fraud claim, Plaintiffs must allege facts to support the following elements: "(1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff *justifiably relied on the representation*, which caused the plaintiff injury." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (emphasis added and internal quotation marks and citation omitted). As set forth below, because Plaintiffs cannot plausibly allege facts to establish justifiable reliance, the Court should dismiss their fraud claim.

Courts routinely hold that reliance on an oral statement that contradicts a written agreement is not justifiable as a matter of law. *See, e.g.*, *DT Apt. Grp., LP v. CWCapital, LLC*, No. 3:12–CV–0437–D, 2012 WL 6693192, at *9 (N.D. Tex. Dec. 26, 2012) (dismissing fraudulent-inducement claim, which also has a justifiable-reliance element, because "plaintiffs have not plausibly pleaded justifiable reliance" given that the oral representation was directly contradicted by written agreement); *see also Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) ("A party to a written contract *cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms*." (emphasis added)); *Barrow-Shaver Res. Co.*, 590 S.W.3d at 499; *Mercedes-Benz, LLC v. Carduco*, 583 S.W.3d 553, 558 (Tex. 2019); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658–59 (Tex. 2018).

---

[10] As described in footnote 3, although the economic-loss doctrine does not apply to fraudulent-inducement claims, Plaintiffs did not plead such a claim. *See* SAC ¶¶ 71–74 [Dkt. No. 17].

For example, in *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, the Texas Supreme Court addressed an oil-and-gas drilling company's claim that Carrizo Oil & Gas, Inc., another oil-and-gas company, committed fraud by orally representing that it would not withhold its consent to allow the drilling company to assign its interest in a contract and later refusing to consent to the assignment.  590 S.W.3d at 497.  Carrizo Oil & Gas, Inc. had insisted on deleting language in the contract that provided that it "shall not be unreasonably with[o]ld" its consent, but the drilling company nonetheless claimed that Carrizo Oil & Gas, Inc. orally represented three separate times that it would consent to an assignment.  *Id.*  The Texas Supreme Court held that the drilling company could not reasonably rely on the oral representations in light of the language in the contract, and the driller's fraud claim thus failed as a matter of law.  *See id.* at 499–500, 502.

That reasoning applies here.  The plain language of the parties' At-Will Agreements confirms that Plaintiffs' employment is "at-will" and thus terminable by either party at any time, with or without notice or good cause.  *See* At-Will Agreements at 1, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107).  Plaintiffs' allegation that they "reasonably relied" on the Campaign's alleged promise that they would be employed "through November 2020" is contradicted by the plain language of the At-Will Agreements, *see id.*, which Plaintiffs acknowledge in their complaint.  *See* SAC ¶ 23. Accordingly, Plaintiffs fail to and cannot plausibly plead justifiable reliance, and the Court should dismiss their fraudulent-inducement claim as a matter of law.  *See, e.g.*, *DT Apt. Grp., LP*, 2012 WL 6693192, at *9; *Mercedes-Benz, LLC*, 583 S.W.3d at 558; *Barrow-Shaver Res Co.*, 590 S.W.3d at 499; *JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 658–59; *Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424.

5.   The At-Will Agreements preclude Plaintiffs' promissory-estoppel claims.

The existence of the At-Will Agreements precludes a claim for promissory estoppel.  As the Fifth Circuit has made clear, "[u]nder Texas law, a contract comprising the disputed promise

precludes recovery under promissory estoppel." *See Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990).  Thus, Plaintiffs' representation that a contract exists precludes their promissory-estoppel claim as a matter of law.  *See, e.g.*, *Garza-Selcer v. 1600 Pacific Subtenant, LLC*, No. 3:15-CV-03791-N, 2016 WL 11474103, at *4 (N.D. Tex. Aug. 30, 2016) (dismissing promissory-estoppel claim because plaintiff alleged the existence of an express contract); *Areizaga v. ADW Corp.*, 3:14-CV-2899-P, 2015 WL 13567554, at *2 (N.D. Tex. May 19, 2015) (dismissing promissory-estoppel claim because, "where a party alleges a valid contract governing the dispute at issue, Texas law precludes recovery under promissory estoppel"); *City of Clinton v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009) (dismissing promissory-estoppel claims because express agreement covered the subject matter); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . .").  Indeed, "promissory estoppel may not be applied to recover reliance damages when there is a valid contract terminable at will."  *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no writ).  Plaintiffs acknowledge that they entered into express agreements, SAC ¶¶ 23, 46, rendering dismissal proper.

In addition, like their fraud claim, an essential element of Plaintiffs' promissory-estoppel claim is justifiable reliance.  *See, e.g.*, *Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm'l Mktg. Co. W.L.L.*, No. H-07-2684, 2008 WL 5114962, at *22 (S.D. Tex. Dec. 3, 2008) ("Promissory estoppel . . . require[s] reasonable and justifiable reliance on the promise or misrepresentation."); *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986, 2008 WL 1991738, at *2 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) ("Fraud, fraudulent inducement, negligent misrepresentation, and promissory estoppel all require reasonable and justified reliance upon a misrepresentation or promise.").  And, as with their fraud claim, Plaintiffs' promissory-estoppel

21

claim fails because "[w]hen the parties' written agreement addresses the substance of the oral statement and contains language directly contradicting or refuting the oral statement, Texas courts find reliance on subsequent oral promises unreasonable as a matter of law." *Kellogg Brown & Root Int'l, Inc.*, 2008 WL 5114962, at *22.

Here, the At-Will Agreement provides that Plaintiffs were at-will employees, and "[u]pon any termination of [their] employment for any reason, *no further payments by [the Campaign] to [Plaintiffs] will be due* other than accrued but unpaid" salary and benefits at the time their employment was terminated.  At-Will Agreements, attached as Exs. A–H (App. 002, 017, 032, 047, 062, 077, 092, 107) (emphasis added).  The At-Will Agreements further specify that "[n]o statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the [Campaign]." *Id.*

Plaintiffs' purported reliance on oral promises that directly contradict the language of the At-Will Agreement is not justifiable as a matter of law, and dismissal with prejudice is proper. *See, e.g.*, *Kellogg Brown & Root Int'l, Inc.*, 2008 WL 5114962, at *22; *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986, 2008 WL 1991738, at *3.

**B.      Alternatively, the Court should apply the first-to-file doctrine and transfer or stay this case.**

1.      Legal Standard

The first-to-file doctrine applies "when related cases are pending before two federal courts," and provides that "the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).  The doctrine is "grounded in principles of comity . . . .  The federal courts have long recognized that . . . courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each others' affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

The doctrine does not require that the parties or the issues be identical; instead, it requires that there be "substantial overlap" in the issues and parties. *Id.* If the court in the second-filed case determines that there substantial overlap between the two suits, "it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed," *Cadle Co.*, 174 F.3d at 605, and it should stay the second-filed case or transfer it to the first-filed court. *See id.* (second-filed court should transfer action); *Am. Home Mort. Serv., Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 653 (N.D. Tex. 2010) (staying second-filed case).

      2.    <u>This case substantially overlaps with the first-filed case.</u>

On March 23, 2020, former Campaign employees filed a separate lawsuit against the Campaign in the Southern District of New York. *See Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489 (pending in the United States District Court for the Southern District of New York).[11] In *Wood*, the plaintiffs purport to sue on behalf of a nationwide class of former Campaign employees and allege that the Campaign violated the FLSA and fraudulently induced them to accept employment by representing that the Campaign would continue to employ them until the general election. *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 58–59, 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 188–89, 204–06).

Plantiffs filed their Original Petition on April 8, 2020—several weeks after the plaintiffs in *Wood* filed their lawsuit. *See* Pet. at 1 [Dkt. No. 1-2]. Both lawsuits allege FLSA, fraud, and promissory-estoppel claims. *Compare* SAC at 8–9, 12 [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 204–06). Although Plaintiffs' current pleading includes two breach-of-

---

[11] Another group of employees then filed another class action in the same court. *See Sklair et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02495 (pending in the United States District Court for the Southern District of New York). Both *Wood* and *Sklair* were filed before Plaintiffs filed this lawsuit, but this motion focuses on *Wood* because it was the first-filed case.

contract claims not included in *Wood*, the underlying factual allegations in this lawsuit are the same as the alleged facts in *Wood*.  The plaintiffs in both cases allege that the Campaign misclassified them as exempt from the FLSA and failed to pay them overtime for work in excess of 40 hours per week, promised them employment until the November 2020 general election, and discharged them in March 2020.  *Compare* SAC at 9–13 [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. at 58–59, 74–76 (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 188–89, 204–06).  This case and *Wood* thus meet the "substantial overlap" standard on the face of the pleadings.  *Compare* SAC [Dkt. No. 10], *with Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 1:20-cv-02489, First Am. Compl. (S.D.N.Y. Mar. 30, 2020), attached as Ex. K (App. 130–214).  The subject matter is the same because both actions seek overtime, lost wages, and other compensation based on the plaintiffs' alleged discharge before the November 2020 general election.  The defendant is the same in both actions.  In addition, the plaintiffs in *Wood* assert FLSA claims on behalf of a putative collective that ostensibly would include Plaintiffs if the court certifies the proposed collective in that case.[12]  Transferring or staying this case thus will "avoid the waste of duplication, . . . avoid rulings which may trench upon the authority of sister courts, and . . . avoid piecemeal resolution of issues that call for a uniform result."  *Cadle Co.* 174 F.3d at 603.

The fact that this case contains two breach-of-contract claims not included in *Wood* does not counsel against applying the first-to-file doctrine because, as the Fifth Circuit has made clear, the issues need not be identical.  *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) ("Under this first-to-file rule, the cases need not be identical; rather, the crucial inquiry is one of

---

[12] By seeking to apply the first-to-file doctrine, the Campaign does not concede that the Campaign, or Plaintiffs in this case or *Wood* are subject to coverage under the FLSA, or that the Plaintiffs are similarly situated to each other or to the Plaintiffs in *Wood*.  *See Wood* at Dkt. 94.  Nor does the Campaign concede that field organizers and other organizing employees could satisfy the requirements of Fed. R. Civ. P. 23.  *See Wood* at Dkt. 111; *Sklair* at Dkt. 21.

substantial overlap." (citation and internal quotation marks omitted)); *Save Power Ltd.*, 121 F.3d at 950 ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues." (internal quotation marks and citation omitted)); *see also, e.g.*, *KCCR, Inc. v. Brunner*, No. H–10–cv–01263, 2010 WL 4236868, at *3 (S.D. Tex. Oct. 21, 2010) ("[S]ubstantial overlap does not require that the issues or parties be identical, but merely that the two actions involve closely related questions, common subject matter or an overlap of the core issues.").

Because the cases "involve closely related questions, common subject matter [and] an overlap of the core issues," *KCCR, Inc.*, 2010 WL 4236868, at *3, the Court should transfer this case to the Southern District of New York or should stay it pending that court's decisions in *Wood*.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and dismissal is proper under Rule 12(b)(6).  Because amendment would be futile, the Court should dismiss the claims with prejudice.  And, should the Court reach the issue, it should transfer any remaining claims to the United States District Court for the Southern District of New York or stay this case pending the resolution of the earlier-filed *Wood* case.

Dated:  August 24, 2020.

Respectfully submitted,

*/s/ J. Meghan McCaig*
Greg W. Curry
State Bar No. 05270300
Greg.Curry@tklaw.com

J. Meghan McCaig
State Bar No. 24070083
Meghan.McCaig@tklaw.com

Dina McKenney
State Bar No. 24092809
Dina.McKenney@tklaw.com

Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (facsimile)

ATTORNEYS FOR DEFENDANT

26