**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CAMERON MCCRARY, SCHELDON WILLIAMS, ASHLEY WASHINGTON, SHANIQUA RISCHER, JONATHAN DAVIS, PABLO LUNA, JAMES TAYLOR, AND KERRY BILLINGS,** | § § § § § § | |
| *Plaintiffs,* | § § | **CIVIL ACTION NO. 3:20-CV-01264-X** |
| **v.** | § § | |
| **MIKE BLOOMBERG 2020 INC.,** | § § | |
| *Defendant* | § § | |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, ALTERNATIVELY, TO TRANSFER OR STAY AND BRIEF IN SUPPORT

Cameron McCrary, Scheldon Williams, Ashley Washington, Shaniqua Rischer, Jonathan Davis, Pablo Luna, James Taylor, and Kerry Billings, Plaintiffs herein (collectively, "Plaintiffs"), now file this Response to Motion to Dismiss Plaintiffs' Second Amended Complaint or, Alternatively, to Transfer or Stay and Brief in Support, as follows.

# Table of Contents

I. Introduction ........................................................................................................................ 5

II. Legal Standard .................................................................................................................... 6

III. Defendant's Motion Fails as to Plaintiffs' Claim for Breach of Promise to Pay .................. 7

    A. Plaintiffs' Claim of Breach of Contract with Respect to a Guarantee of Salary is not Barred by the Employment-at-Will Doctrine. ...................................................... 7

    B. Employment-related Agreements are Not Barred by the  Employment-at-Will Doctrine. ...................................................................................................................... 8

IV. Defendant's Motion Fails as to Plaintiffs' Claim for Breach of  Agreement to Employ through November 2020 ................................................................................................... 9

    A. Bloomberg 2020 Made Clear and Unequivocal Statements of its Intent to Employ Plaintiffs Through the General Election. ...................................................................... 9

    B. The Written Agreement with Respect to Employment-at-Will is Vague .............. 10

    C. The Written Employment Could be Modified by Oral Agreement ....................... 11

V. Defendant's Motion Fails as to Plaintiffs' Promissory Estoppel Claims ........................... 13

VI. Defendant's Motion Fails as to Fraud ............................................................................... 14

    A. Fraudulent Inducement Claims are Not Barred  by the Economic-Loss Rule. ...... 14

    B. Plaintiffs' Allegations of Justifiable Reliance are Not Foreclosed by the Existence of the At-Will Language in the Offer Letters. ............................................................ 15

VII. Defendant's Motion Fails as to Plaintiffs' FLSA claims ..................................................... 16

    A. Defendant has Admitted that it is Covered by the FLSA ....................................... 17

    B. Defendant Meets the Definition of an Enterprise Covered by the FLSA .............. 17

    C. Political Organizations Are Not Exempt from FLSA  Coverage as a Matter of Law ............................................................................................................................. 20

    D. Plaintiffs are Individually Covered by the FLSA. ................................................. 22

VIII. Defendant's Request to Stay or Transfer Proceedings Must Be Denied Because the First-Filed Rule Does Not Apply in These Circumstances .......................................................... 23

## Cases

*Akins v. Worley Catastrophe Response, LLC,* 921 F. Supp. 2d. 593 (E.D. La. 2013)..............................23

*Am. Garment Props. v. CB Richard Ellis-el Paso, LLC,* 155 S.W.3d 431 (Tex. App. –El Paso 2004, *no pet.*) ................................................................................................................................................12

*Anderson v. Durant,* 550 S.W.3d 605 (Tex. 2018) ................................................................... 14, 15

*Archie v. Grand Cent. P'ship, Inc.,* 997 F. Supp. 504 (S.D.N.Y. 1998) ....................................18

*Balderas v. Barmadon Mgmt. LLC,* 2019 WL 1258921 (S.D.NY. March 19, 2019) ...............18

*Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp.2d 280 (S.D.N.Y. 2000) ......................22

*Brennan v. Greene's Propane Gas Service, Inc.,* 479 F.2d 1027 (5th Cir. 1973) ......................18

*Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599 (5th Cir. 1999) ..................................23

*Chambers v. Allstate Ins. Co.,* 2015 Tex. App. LEXIS 1197 (Tex.App.—Dallas Feb. 5, 2015, *no pet.*), 2015 WL 481191 .............................................................................................................13

*City of Dallas v. Arredondo,* 415 S.W.3d 327 (Tex. App.—Dallas 2013, *no pet.*)....................8

*Dallas Farm Mech. Co. v. Reaves,* 307 S.W.2d 233 (Tex. 1957)...............................................15

*Dunphy v. Project Aristocrat Life Found.,* 2019 U.S. Dist. LEXIS 198632, 2019 WL 6069184 (S.D. Tex. Nov. 15, 2019) .............................................................................................. 18, 22

*First Bank v. Brumitt,* 519 S.W.3d 95 (Tex. 2018) ......................................................................9

*Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.,* 960 S.W.2d 41 (Tex. 1998).....14, 15

*Group Hosp. Srvcs., Inc. v. One and Two Brookriver Center,* 704 S.W.2d 886 (Tex.App.—Dallas 1986, *no writ*) ................................................................................................................................12

*Guyton v. Legacy Pressure Control, Inc.,* 2016 U.S. Dist. LEXIS 137896 (W.D. Tex. Oct. 4, 2016)23, 24

*Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227 (Tex. 1986) ......................................................8

*Hayes v. Eateries, Inc.,* 905 P.2d 778 (Okla. 1995)...................................................................10

*In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008) ..................................................24

*Jacobs v. N.Y. Foundling Hosp.,* 577 F.3d 93 (2nd Cir. 2009) ............................................ 19, 20

*Katz v. DNC Servs. Corp.,* 2019 U.S. Dist. LEXIS 16747, 2019 WL 4752056 (E.D. Pa., Sept. 28, 2017) ................................................................................................................................. 19, 22

*Lakeway Co., v. Leon Howard, Inc.,* 585 S.W.2d 660 (Tex. 1979)..............................................9

*Law Office of Andrew L. Jones, P.C. v. Schachar,* 2020 Tex. App. LEXIS 1160 (Tex. App.—Dallas Feb. 11, 2020, *pet. filed*) ........................................................................................................12

*Lone Star Steel Co. v. Scott,* 759 S.W.2d 144 (Tex.App.—Texarkana 1988, *writ denied*) ...................12

*Mabee v. White Plains Pub. Co.,* 327 U.S. 178 (1946) ..............................................................22

*Mann v. Robles,* 2016 Tex.App. LEXIS 3250 (Tex.App.—Corpus Christi 2016), *pet. denied,* 2017 Tex. LEXIS 57 (Tex. Jan. 20, 2017) .............................................................................................13

*Mar-Lan Indus., Inc. v. Nelson,* 635 S.W.2d 853 (Tex. App.—EL Paso 1982, *no writ*)......................12

*Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.,* 2013 U.S. Dist. LEXIS 202520 (W.D. Tex. Jan. 20, 2013) ................................................................................................................................. 13, 15

*Midland Jud. Dist. Cmty. Supervision & Corr. Dep't v. Jones,* 92 S.W.3d 486 (Tex. 2002) .................... 9

*Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501 (Tex. 1998) .......................................... 9, 10

*Pointe W. Ctr., LLC v. It's Alive, Inc.,* 476 S.W.3d 141 (Tex.App.—Houston [1st Dist.] 2015, *pet. denied*) ............................................................................................................................................. 12

*Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796 (Tex. App.--Dallas 2008, *pet. denied*) ........................... 12

*Roussell v. Brinker Intern., Inc.,* 441 F.Appx 222 (5th Cir. 2011) ............................................................. 23

*Rowe v. Montgomery Ward & Co.,* 437 Mich. 627, 473 N.W.2d 268 (Mich. 1991) .............................. 9

*Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.,* 474 F.3d 828 (5th Cir. 2007) ........................................ 22

*Stovall & Assocs., P.C. v. Hibbs Fin Str., Ltd.,* 409 S.W. 3d 790 (Tex. App.—Dallas 2013, *no pet.*) ..... 8

*Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290 (1985) ........................................... 19, 20, 21

*United States v. Barlow,* 568 F.3d 215 (5th Cir. 2009) ....................................................................... 22

*United States v. Hornaday,* 392 F.2d 1306 (11th Cir. 2004) ............................................................... 22

*Vanegas v. Am. Energy Servs.,* 302 S.W. 3d 299 (Tex. 2009) ............................................................... 8

## Statutes and Codes

29 C.F.R. §779.103 ................................................................................................................................. 22

29 C.F.R. §779.214 ....................................................................................................................... 19, 20, 21

29 U.S.C. §§203(s)(1)(a)(I) ..................................................................................................................... 17

29 U.S.C. §203(r) ................................................................................................................................... 21

TEX. BUS. & COMMERCE CODE §26.01(b)(5), (6) .................................................................................... 8

## Court Documents

Def.'s App. Supp. Mot. Dismiss Pls.' Second Am. Compl. ................................................................. 17

Pls.' Second Am. Compl. ................................................................................................................... 7, 15

## I.     Introduction

This case involves claims by former employees of the Mike Bloomberg 2020 Inc. presidential campaign ("Bloomberg 2020" or "Defendant") alleging breach of contract, promissory estoppel, and fraud all relating to the campaign's oft-repeated and public statements guaranteeing Plaintiffs' employment (or, alternatively, payment of salary in lieu of employment) through November 2020. In addition, Plaintiffs seek to recover unpaid overtime under the federal Fair Labor Standards Act.

As to the employment contract claim, the repeated statements of the Defendant's supervisory employees reveal a well-considered plan by Defendant to make clear and unequivocal promises of continued employment. These promises were made both prior to and during employment, were made publicly to the media, and Plaintiffs were instructed to relay such promises to prospective voters as part of the Bloomberg 2020 campaign strategy. There are sufficient factual allegations in this case to support a claim for breach of employment contract.

Plaintiffs' second breach of contract claim is based upon an enforceable oral agreement between Plaintiffs and Defendant in which the Defendant induced Plaintiffs to remain with the failing campaign in exchange for a promise to continue to pay the Plaintiffs through November 2020, even if the campaign were suspended. This oral agreement, which operated in many ways similar to a retention bonus, is enforceable, and Defendant's motion should be denied.

With respect to promissory estoppel, Defendant argues that Plaintiffs cannot maintain breach of contract claims and a promissory estoppel claim at the same time;

however, Plaintiffs are well within their rights to plead promissory estoppel as an alternative theory to breach of contract.

Defendant's attacks on Plaintiffs' fraud claims are fatally infirm. Defendant simply ignores that a fraudulent inducement claim can be brought alongside a breach of contract claim, and, in fact, the existence of the eventual written agreement is essential to the fraudulent inducement claim. Further, Defendant's contention that Plaintiffs' were not justified in relying on its oft-repeated promise of contractual employment is nonsensical. Given how central the guarantee of employment was to Michael Bloomberg's campaign theme as a demonstration of his commitment to see the election through to its end, it was reasonable, foreseeable, and justifiable for Plaintiffs to rely on those promises. They were not aware then, as they are now, that Mr. Bloomberg's word is a thin reed upon which one cannot depend for support.

Finally, with respect to the FLSA claims, Defendant's motion amounts to nothing less than a request for the Court to rewrite the statute by creating a broad exemption for tax-exempt organizations thus shielding them from any FLSA coverage or liability. Not only is this request unjustified under the statute and the regulations, but it is a curious position for Bloomberg 2020 to take given that it told each of these Plaintiffs that they were covered by FLSA.

## II.    Legal Standard

Plaintiffs do not dispute the well-established standards under which a Rule 12(b)(6) motion is evaluated.

### III.     Defendant's Motion Fails as to Plaintiffs' Claim for Breach of Promise to Pay

   A.      *Plaintiffs' Claim of Breach of Contract with Respect to a Guarantee of Salary is not Barred by the Employment-at-Will Doctrine.*

Plaintiffs allege that Defendant breached an enforceable oral agreement to pay Plaintiffs' salaries through November 2020 regardless of where they were employed. Plaintiffs contend that such promise was made in order to induce Plaintiffs not to abandon the failing campaign. The employment-at-will doctrine does not prohibit the enforcement of such employment-related promises that are not conditioned upon continued employment, nor does the claim fail for lack of consideration.[1]

With respect to this claim, Plaintiffs contend:

> As the prospects for a successful candidacy dimmed, the nature of the promise to Plaintiffs changed. Plaintiffs were told that they might not be employed by Bloomberg 2020 going forward, but that they would continue to be *paid* by Bloomberg 2020 through November and assigned to a new PAC, the Democratic National Committee, or another campaign organization. Their pay was promised through November regardless of whether the campaign floundered.

(Pls.' Second Am. Compl. at ¶25, ECF No. 395.) This promise was not a guarantee of continued employment. It was evident by that point that the campaign was unlikely to continue, and therefore, the campaign was trying to keep Plaintiffs from abandoning a sinking ship by promising to pay staffers' salaries through the end of the campaign regardless of where they ended up working. This promise was, in fact, based upon the

---

[1] By way of clarification, Plaintiffs are pleading here in the alternative. Plaintiffs contend that they were promised employment through November 2020; however, there were additional promises made regarding the payment of salary, irrespective of actual employment, through the same date. The damages from these two claims are similar, but the theories behind the two contract claims are different.

assumption that the Plaintiffs would *not* continue to be employed by Bloomberg 2020. The guarantee of pay was extended to induce campaign employees to stay on board during the difficult time when it appeared that the campaign was doomed and the promise of continued employment might not be honored. Remaining with the campaign was the consideration provided by Plaintiffs. This was an oral agreement, performable within a year, accepted by the Plaintiffs through continued employment, and, therefore, enforceable. *Stovall & Assocs., P.C. v. Hibbs Fin Str., Ltd.,* 409 S.W. 3d 790, 798 (Tex. App.—Dallas 2013, *no pet.*)*;* TEX. BUS. & COMMERCE CODE §26.01(b)(5)-(6).

### B.   *Employment-related Agreements are Not Barred by the Employment-at-Will Doctrine.*

It is well-established under Texas law that "[e]ven in an at-will employment situation, an employer and an employee may enter into an employment-related contract." *City of Dallas v. Arredondo,* 415 S.W.3d 327, 345 (Tex. App.—Dallas 2013, *no pet.*) (citing *Vanegas v. Am. Energy Servs.,* 302 S.W. 3d 299, 303 (Tex. 2009) *(*stating that promise to pay five percent of proceeds from sale or merger to at-will employees who remained after sale or merger was enforceable as a unilateral contract); *Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227, 228 (Tex. 1986) (recognizing that the terms of employment of at-will employees may be modified)). In a sense, the promise to continue salary operates much like a retention bonus which would be enforceable regardless of the at-will status of the employee. Similarly, severance agreements which contain salary continuation benefits are not barred by the employment-at-will doctrine because they are not dependent upon continued employment.

Moreover, the parol evidence rule does not change this result. The rule bars enforcement of prior or contemporaneous agreements to a written agreement but "does not apply to agreements made subsequent to the written agreement." *First Bank v. Brumitt,* 519 S.W.3d 95, 111 (Tex. 2018) (quoting *Lakeway Co., v. Leon Howard, Inc.,* 585 S.W.2d 660, 662 (Tex. 1979)). Thus, the subsequent agreement to guarantee salary through the 2020 general election is an enforceable oral agreement.

Consequently, the Motion to Dismiss with respect to the breach of contract claim relating to a guarantee of salary through November 2020 must be denied as Plaintiffs have stated a claim on which relief may be granted.

### IV.   Defendant's Motion Fails as to Plaintiffs' Claim for Breach of Agreement to Employ through November 2020

#### A.   *Bloomberg 2020 Made Clear and Unequivocal Statements of its Intent to Employ Plaintiffs Through the General Election.*

Dismissal of a claim for enforcement of a promise to employ for a specific period of time requires more than merely invoking the words, "employment-at-will." The issue requires a close look at the facts of the case to determine whether the employer has made "statements of job security" that are "clear and unequivocal." *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 503 (Tex. 1998) (citing *Rowe v. Montgomery Ward & Co.,* 437 Mich. 627, 473 N.W.2d 268, 275 (Mich. 1991); *Midland Jud. Dist. Cmty. Supervision & Corr. Dep't v. Jones,* 92 S.W.3d 486, 487 (Tex. 2002)).

Here, Plaintiffs present a situation far different from an employee trying to convert a vague clause from an employment handbook or a statement of an annual salary in an offer letter into a guaranteed period of employment. Rather, the employer in this case,

both before and after hire, loudly touted its intent to continue to employ Plaintiffs through the general election. The promise was made by Bloomberg 2020 supervisors based on written instructions and interview outlines provided by the campaign, was discussed openly among supervisors and employees, and was even proclaimed to the media as evidence of Bloomberg's commitment to work for the defeat of President Trump in 2020 even if he were no longer a candidate himself. It was a key selling point of the Bloomberg 2020 campaign regardless of whether Mr. Bloomberg had his fingers crossed when he said it.

The *Montgomery* court, quoting the Supreme Court of Oklahoma, observed that courts "must distinguish between *carefully developed employer representations* upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." 965 S.W.2d at 502 (emphasis added) (quoting *Hayes v. Eateries, Inc.,* 905 P.2d 778, 783 (Okla. 1995)). Here, the Court is faced with long series of carefully developed employer representations upon which an employee could reasonably rely. Given that these promises were made in Plaintiffs' interviews, throughout their employment, and in public statements by the campaign, Plaintiffs' could reasonably rely on Bloomberg 2020's promises even though they turned out to be lies.

### B.     *The Written Agreement with Respect to Employment-at-Will is Vague.*

Defendant's attack on the breach of contract claim with respect to continued employment is straightforward: There was a written offer letter that stated that

employment would be at-will, and that ends the inquiry. Unfortunately for Defendant, that simply is not a correct statement or application of Texas law.

As an initial matter, there is a legitimate issue as to what the offer letter meant as to "employment-at-will." As explained in the First Amended Complaint, when Plaintiffs were hired by Bloomberg 2020, there were no promises made as to where they would be working. (The "At-a-Glance" script for employment interviews states, "Guaranteed employment through November 2020 with Team Bloomberg (possibility of relocating)"). The immediate need was in Texas because of the impending Super Tuesday primaries, but there was no guarantee that Plaintiffs would remain in Texas. They could have been sent, literally, anywhere in the United States.

That becomes important when examining the language of the offer letter which states, "[Y]our employment at the Organization is and will continue to be 'at will,' *as defined by the applicable law,*" (emphasis added) and then goes on to provide a definition of at-will employment. However, the offer letter does not state what the "applicable law" would be, and Plaintiffs could not be expected, as non-lawyers, to know when and where the employment-at-will doctrine might be applicable. Therefore, there was ambiguity built into the offer letter as to when Plaintiffs would or would not be at-will employees "as defined by the applicable law." There will be a dispute in this case as to whether the Parties had a meeting of the minds on this issue.

### C.     *The Written Employment Could be Modified by Oral Agreement.*

Defendant recasts the parol evidence rule as dictating that a written agreement cannot be modified or supplanted by an oral agreement. That simply is not the case under

Texas law. Texas courts consistently have held that "a written contract not required by law to be in writing may be modified by a subsequent oral agreement *even though it provides it can be modified only by a written agreement.*" *Law Office of Andrew L. Jones, P.C. v. Schachar,* 2020 Tex. App. LEXIS 1160 at *8 (Tex. App.—Dallas Feb. 11, 2020, *pet. filed*), 2020 WL 633677 (emphasis added) (citing *Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 808 (Tex. App.--Dallas 2008, *pet. denied); Pointe W. Ctr., LLC v. It's Alive, Inc.,* 476 S.W.3d 141, 151 (Tex.App.—Houston [1st Dist.] 2015, *pet. denied*)); *see also Am. Garment Props. v. CB Richard Ellis-El Paso, LLC,* 155 S.W.3d 431, 435 (Tex. App. –El Paso 2004, *no pet.*); *Mar-Lan Indus., Inc. v. Nelson,* 635 S.W.2d 853, 855 (Tex. App.—EL Paso 1982, *no writ*). Here, the asserted at-will agreement was not required to be in writing because the employment would be completed in less than a year. Therefore, any revision thereto was not required to be in writing despite language in the offer letter to the contrary.

The basis for these holdings is that "the written agreement is of no higher legal degree than an oral one, and either may vary or discharge the other." *Am. Garment Props.,* 155 S.W.3d at 435 (citing *Mar-Lan Indus.,* 635 S.W. 2dd at 855; *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 153 (Tex.App.—Texarkana 1988, *writ denied); Group Hosp. Srvcs., Inc. v. One and Two Brookriver Center,* 704 S.W.2d 886, 890 (Tex.App.—Dallas 1986, *no writ*)). "Thus, proof that a contract provision requires modifications to be in writing does not establish as a matter of law that the parties did not modify the contract orally." *Schacher,* 2020 Tex.App. LEXIS 1160 at *8 (citing *Point W. Ctr.,* 476 S.W.3d at 151).

Here, following the offer letter (which was provided to some of the Plaintiffs only *after* accepting employment), Bloomberg 2020 repeatedly stated its unequivocal intention

to continue to employ Plaintiffs through November 2020, both directly to the employees, in the media, and even putting the words in Plaintiffs' own mouths as talking points for phone calls and in-person canvassing discussions. Certainly, if the employer is telling its employees to represent to third parties that they have been promised employment through a date certain, the employees are reasonable in concluding that this is a clear and unequivocal expression of the employer's intent to do so.[2]

## V.  Defendant's Motion Fails as to Plaintiffs' Promissory Estoppel Claims

Defendant next argues that Plaintiffs' promissory estoppel claims are barred because Plaintiffs have also pleaded breach of contract. Once again, that simply is not the law. Both state and federal courts in Texas have recognized the propriety of pleading both breach of contract and promissory estoppel as alternative grounds for relief. *Mann v. Robles,* 2016 Tex.App. LEXIS 3250 at *9 (Tex.App.—Corpus Christi 2016), *pet. denied,* 2017 Tex. LEXIS 57 (Tex. Jan. 20, 2017) (accepting the pleading of promissory estoppel as an alternative theory to breach of contract); *Chambers v. Allstate Ins. Co.,* 2015 Tex. App. LEXIS 1197 at *22 (Tex.App.—Dallas Feb. 5, 2015, *no pet.*), 2015 WL 481191; *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.,* 2013 U.S. Dist. LEXIS 202520 at *23-24 (W.D. Tex. Jan. 20, 2013) ("[A] plaintiff may recover on a theory of promissory estoppel in the absence of a valid and enforceable contract where promissory estoppel is pleaded as an alternative

---

[2] As stated *supra,* the parol evidence rule does not change this conclusion as the promises of continued employment were made not only before hiring but also after.

claim to breach of contract"). Thus, it is appropriate for Plaintiffs to plead in the alternative, and the Motion to Dismiss should be denied.

## VI.    Defendant's Motion Fails as to Fraud

Defendant seeks dismissal of Plaintiffs' fraud claims on two bases. First, Defendant alleges that the claims are barred under the economic-loss rule which essentially prevents Plaintiffs from re-casting breach of contract claims as fraud claims. Second, Defendant argues that the fraud claims should be dismissed because Plaintiffs could not plausibly rely on Bloomberg 2020's false statements due to the existence of at-will language in the offer letters. Neither argument withstands scrutiny.

### A.    Fraudulent Inducement Claims are Not Barred by the Economic-Loss Rule.

The Texas Supreme Court addressed the precise interaction of fraud/fraudulent inducement claims and breach of contract claims in *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41 (Tex. 1998). The *Formosa* court expressly rejected the argument that a fraudulent inducement claim could not be maintained where there is a breach of contract claim: "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Id.* at 46. The court further held that such fraud could be based on a party making a promise "with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Ibid.; Anderson v. Durant,* 550 S.W.3d 605, 613 (Tex. 2018) ("Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. ***Because***

*fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof.*") (emphasis added); *see also Meltzer,* 2013 U.S. Dist. LEXIS 202520 at *17-18 ("The Texas Supreme Court has expressly rejected the proposition that the economic-loss rule precludes tort damages in fraudulent-inducement cases").

The *Formosa* court clearly held that "tort damages are not precluded simply because a fraudulent representation causes only an economic loss." 960 S.W. 2d at 47. This is the case here because the legal duty not to engage in fraud to procure a contract is "separate and independent from the duties established by the contract itself." *Id.* at 48 (citing *Dallas Farm Mech. Co. v. Reaves,* 307 S.W.2d 233, 239 (Tex. 1957)). Indeed, as the *Anderson* court points out, the existence of a contract is actually an element of the cause of action. 550 S.W.3d 605.

Here, Plaintiffs allege:

> Bloomberg 2020 made this promise of guaranteed employment specifically for the purpose of inducing Plaintiffs and others to accept employment with the campaign and, in some cases, to relocate to Texas. Further, upon information and belief, Bloomberg 2020 made this promise with no intention of fulfilling it if the campaign failed.

(Pls.' Sec. Am. Compl. at ¶20).  Because this is a fraudulent inducement claim alleging that promises were made with no intention of complying with them, the economic-loss rule is inapplicable.

### B.    *Plaintiffs' Allegations of Justifiable Reliance are Not Foreclosed by the Existence of the At-Will Language in the Offer Letters.*

The issue of whether Plaintiffs justifiably relied on the misrepresentations of Bloomberg 2020 is a fact issue inappropriate for a ruling on a 12(b)(6) motion. Defendant

does not allege that Plaintiffs failed to plead a cause of action for fraud or fraudulent inducement but instead argues that success on such claims is implausible. That argument reflects a misunderstanding of how the real world operates and how employees reasonably and justifiably rely upon the promises of their employers, not knowing in the moment that such promises are prevarications and that their employer lacks the integrity necessary to honor his word.

As set forth in the pleadings, both prior to and during Plaintiffs' employment by Bloomberg 2020, they were directly promised employment through November 2020 by their supervisors and managers. Those promises were echoed publicly throughout their employment. Plaintiffs were directed to use those promises as talking points to show Mike Bloomberg's commitment to defeat Donald Trump in the general election.

Defendant imagines some world in which lay persons accepting an employment offer amidst a chorus of voices promising guaranteed employment are going to see an at-will clause in an offer letter and therefore dismiss *everything* they have been told and are being told on a regular basis by their employer. Mike Bloomberg and his campaign organization might believe that it was unreasonable for Plaintiffs to expect the campaign to honor its promises, even as they doubled-down on them daily, but Plaintiffs expect that a jury will hold Defendant to its word.

### VII.    Defendant's Motion Fails as to Plaintiffs' FLSA claims

Defendant moves the Court to dismiss Plaintiffs' FLSA claims on two grounds. First, because Bloomberg 2020 was a tax-exempt entity, it allegedly is not a covered enterprise. Second, Plaintiffs allegedly were not engaged in interstate commerce and,

therefore, are not individually covered by the FLSA. Neither argument merits granting the Motion.

>    A.    *Defendant has Admitted that it is Covered by the FLSA.*

As a threshold matter, it is worth noting that Plaintiffs are alleging nothing with respect to FLSA coverage that Defendant has not already admitted. Considering just one employee's documents included in Defendant's Appendix, we find the following in Cameron McCrary's offer letter:

>    "In light of your job duties and compensation, *this position is classified as exempt from the overtime provisions of federal and applicable state laws.*"

(Def.'s App. Supp. Mot. Dismiss Pls.' Second Am. Compl. at App. 002, ECF No. 129 (emphasis added).) Similarly, in the "Notice and Acknowledgment of Pay Rate and Pay Day," Defendant lists Mr. McCrary's position as "FLSA Status: Exempt" (*Id.* at App. 004, ECF No. 131.)

Thus, Defendant itself acknowledged that it was covered by the FLSA during the Plaintiffs' employment contending only (and incorrectly) that Plaintiffs were exempt from the overtime provisions of the FLSA because of their job duties.

>    B.    *Defendant Meets the Definition of an Enterprise Covered by the FLSA.*

Under the FLSA's straightforward analysis, Plaintiffs have pleaded sufficient facts to establish that Bloomberg 2020 is a covered enterprise under the FLSA because it engaged in the sale of goods in competition with other sellers and had a gross volume of sales exceeding $500,000. 29 U.S.C. §§203(s)(1)(a)(I). The enterprise coverage under the FLSA has two elements: "(1) that the employer's employees engaged in qualifying

activity, and (2) that the employer's gross sales exceed $5000,000 annually." *Dunphy v. Project Aristocrat Life Found.,* 2019 U.S. Dist. LEXIS 198632 at *14, 2019 WL 6069184 (S.D. Tex. Nov. 15, 2019). In the Fifth Circuit, the first element "can be satisfied if goods handled or sold by the enterprise's employees moved across state lines at some time in the flow of commerce." *Ibid. (*citing *Brennan v. Greene's Propane Gas Service, Inc.,* 479 F.2d 1027, 1030-31 (5th Cir. 1973)). In their Second Amended Original Complaint, Plaintiffs pleaded sufficient facts to meet both elements. Additionally, courts have held that where the $500,000 sales threshold is satisfied, "the plaintiff is 'virtually' guaranteed to satisfy the first prong." *Balderas v. Barmadon Mgmt. LLC,* 2019 WL 1258921 at *3 (S.D.NY. March 19, 2019) *(*quoting *Archie v. Grand Cent. P'ship, Inc.,* 997 F. Supp. 504, 528 (S.D.N.Y. 1998)).

Thus, based on information obtained since the First Amended Original Complaint was filed, Plaintiffs allege:

- Defendant sold merchandise online;
- Defendant sold merchandise valued at approximately $890,000;
- Defendant's online sale of products was integral to its general operations because it intended that such sales would communicate messages concerning Michael Bloomberg's candidacy and energize his supporters;
- Defendant was in competition with other commercial sellers of similar products;
- Defendant did not operate with any charitable, religious, or educational purpose.[3]

While these allegations establish enterprise coverage, Defendant nonetheless contends that because it is a tax-exempt, non-profit organization, it is exempt from FLSA

---

[3] Importantly, all of these issues are appropriate subjects for discovery in order to determine whether Defendant's asserted defenses have a valid factual basis. Sufficient facts are pleaded for Rule 12 purposes.

coverage. Not only has no court reached this conclusion, but the arguments put forth by Defendant do not compel an extension of the FLSA's exemptions.

Congress's 1961 amendment to the FLSA, which added enterprise coverage, was intended to "substantially broaden[ ] the scope of the Act to include any employee of an enterprise engaged in interstate commerce." *See Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985); *see also Jacobs v. N.Y. Foundling Hosp.,* 577 F.3d 93, 96-87 (2nd Cir. 2009). Following the 1961 amendment, there are only three specific types of entities that are presumed to lack the business purpose necessary for establishing FLSA coverage: Charitable, religious, or educational organizations. *See* 29 C.F.R. §779.214. Bloomberg 2020 fits none of these categories. Notably, even these types of organizations are covered by the FLSA if they are engaged in commercial activities. *See id.; see also Tony & Susan Alamo Found.* 471 U.S. at 296 ("The statute contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations").

No provision of the FLSA or its supporting regulations provide an exemption for political organizations. No court has adopted such an exemption; to the contrary, one of the rare courts to consider this issue observed: "Neither the FLSA nor case law clearly state whether enterprise coverage may apply to a political campaign. […] Moreover, the FLSA broadly defines enterprise coverage as 'the related activities performed […] by a person or persons for a common business purpose.' Thus, arguably it could apply to a political campaign." *Katz v. DNC Servs. Corp.,* 2019 U.S. Dist. LEXIS 167647 at *21 n.3, 2019 WL 4752056 (E.D. Pa., Sept. 28, 2017) (citing *Tony & Susan Alamo Found.,* 471 U.S. at 295).

Thus, as there is no case law establishing that campaigns enjoy an exemption not present in the statute, the motion to dismiss should be denied.

Even if Defendant's activities were analogous to those of charitable, religious, or educational entities, the FLSA would still apply. Where an entity, regardless of tax status, "engage[s] in ordinary commercial activities" or "serve[s] the general public in competition with ordinary commercial enterprises," it operates with a "business purpose" and is a covered enterprise under the FLSA. *See Tony & Susan Alamo Found.,* 471 U.S. at 297-99) (*citing* 29 C.F.R. §779.214); *see* also *Jacobs,* 577 F.3d at 97.

Here, Defendant sold nearly $1 million of merchandise in the online marketplace in competition with other sellers. The Supreme Court has made clear that even nonprofit entities with a "religious character" are covered where they have engaged in commercial activities. *Tony & Susan Alamo Found.,* 471 U.S. at 306. No statute or judicial opinion suggests that making a profit is a prerequisite to FLSA coverage.

Accordingly, even if the Court were to determine that political campaigns were equivalent to charitable, religious, or educational organizations, it should still find that the FLSA applies to Bloomberg 2020 in the instant case.

> C.   *Political Organizations Are Not Exempt from FLSA*
> *Coverage as a Matter of Law.*

Defendant asks the Court to make a novel ruling that all political organizations are exempt from FLSA coverage because they are tax-exempt, regardless of whether they engage in commercial activity in competition with other businesses as defined by the Act. The Court should reject this invitation to legislate from the bench. Such a broad

exemption from the FLSA does not exist whether for political organizations or any other tax-exempt entity. Again: "The statute contains no express or implied exception for commercial activities conducted by […] nonprofit organizations." *Tony & Susan Alamo Found.,* 471 U.S. at 296.

Congress and the DOL carefully considered and stated which types of entities would not be covered by the FLSA, and they did not expressly exempt political organizations. In the intervening 60 years, no court has done so, either. *See* 29 U.S.C. §203(r); 29 C.F.R. §779.214. The DOL issued regulations codifying Congress's intent, and under the law, only "eleemosynary, religious, or educational organizations" are *presumed* to lack a business purpose (unless they engage in commercial activity). 239 CR § 779.214. Because Congress and the DOL declined to add political organizations to the list of entities presumed to lack a business purposes, this Court should follow suit.

The Court should also reject Defendant's assertions that various other provisions of tax law and FEC reporting requirements establish that it is exempt from the FLSA. Unsurprisingly, Defendant is unable to point to a single case that has determined that tax laws or FEC reporting requirements provide a blanket exemption to FLSA coverage for any entity. Merely because Congress has exempted an organization from income taxes does not mean that they intended to exempt them from the FLSA.

Inasmuch as the Defendant meets the basic requirements for enterprise coverage, the Court should find that it is covered by the FLSA and deny the Motion to Dismiss.

D.      *Plaintiffs are Individually Covered by the FLSA.*

Even if the Court finds that Defendant is not a covered entity, Plaintiffs are individually covered by the FLSA. This type of coverage applies to employees who were "engaged in commerce" such that the employee directly participated in the "actual movement of persons or things in interstate commerce." *Katz,* 2019 U.S. Dist. LEXIS 167647 at *21; *Dunphy,* 2019 U.S. Dist. LEXIS 198632 at *17. Individual coverage applies when employees "handle or otherwise work on goods moving in interstate commerce," such as the "regular[ ] use [of] the mails, telephone or telegraph for interstate communication." 29 C.F.R. §779.103; *Katz,* 2019 U.S. Dist. LEXIS 167647 at *21. "Any regular contact with commerce, no matter how small, will result in coverage." *Dunphy,* 2019 U.S. Dist. LEXIS 198632 at *14 (quoting *Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.,* 474 F.3d 828, 829 (5th Cir. 2007)).

It is well-settled that "the internet is an instrumentality of interstate commerce." *Id.* at *18 (citing *United States v. Barlow,* 568 F.3d 215, 220 (5th Cir. 2009)). Other examples of "engaged in commerce" include "sporadic and occasional shipments of insubstantial amounts of goods" (*Mabee v. White Plains Pub. Co.,* 327 U.S. 178 (1946)); ordering cleaning supplies from outside vendors (*Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp.2d 280, 287 (S.D.N.Y. 2000)); and use of the internet (*United States v. Hornaday,* 392 F.2d 1306, 1311 (11th Cir. 2004)).

Here, Plaintiffs allege that they used the internet and telephones to communicate with Defendant's New York headquarters and other campaign employees daily. They used campaign materials that were shipped to their offices across state lines. All of this is

sufficient to establish individual FLSA coverage at the pleading stage, and, therefore, the motion to dismiss should be denied.

## VIII.   Defendant's Request to Stay or Transfer Proceedings Must Be Denied Because the First-Filed Rule Does Not Apply in These Circumstances

Simply put, there is no precedent to support the notion that the first-filed rule is applicable where individual plaintiffs pursue claims under the FLSA after a collective action has been filed elsewhere.[4]

Collective actions under the FLSA operate differently than collective actions under Rule 23. In FLSA collective actions, individual employees can only be added to the class upon their written consent. It is an opt-in, rather than an opt-out, process. *Roussell v. Brinker Intern., Inc.,* 441 F.Appx 222, 225 (5th Cir. 2011); *Akins v. Worley Catastrophe Response, LLC,* 921 F. Supp. 2d. 593, 596 (E.D. La. 2013). Where a prospective class member elects not to opt-in to a collective action, he or she is then free to pursue an individual cause of action. *Akins,* 921 F. Supp. 2d at 600 ("[P]laintiff must choose between opting in to that action, or continuing independently with his own action here").

This specific circumstance was addressed in the Western District of Texas in *Guyton v. Legacy Pressure Control, Inc.,* in which the Court ruled that in FLSA cases, the first-to-file rule is applicable "only in the face of competing collective actions." 2016 U.S. Dist. LEXIS 137896 at *5 (W.D. Tex. Oct. 4, 2016). The Court observed that there was no

---

[4] In the Fifth Circuit, the application of the first-to-file rule is discretionary with the district court. *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999).

precedent for applying the rule "for the situation here—a first-filed collective action and a second-filed individual action." *Id.* at *6.

The *Guyton* court held that this application of the rule is "consistent with the interplay between the FLSA's opt-in procedures." *Ibid.* Further, "a plaintiff's choice of venue should generally be respected so long as the transferee venue is not clearly more convenient." *Id.* at *6-7 (citing *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008)). That clearly is not the case here where Defendant seeks to have a group of Texas residents forced to bring their claims halfway across the country on Michael Bloomberg's home turf in New York.

The *Guyton* court summed up the dangers inherent in applying the first-to-file rule in the manner Defendant requests herein:

> Defendants' requested transfer would undercut these principles. Because Plaintiffs are not proceeding on a competing class basis but have chosen to pursue their claims individually, the FLSA suit in the Southern District of Texas will not bind them and they have every right to proceed individually. Part of this right is the ability to choose the forum for their lawsuit. At best, applying the First-to-File rule would prejudice the respect to which their choice of venue is entitled; at worst, it would force them into the [collective action].

*Id.* at *7.

Thus, the Motion to Transfer or Stay the case should be denied as the first-to-file rule is inapplicable to the circumstances presented in this case.

WHEREFORE, Plaintiffs pray that Defendant's motions be denied in their entirety.

Respectfully submitted,

/s/R.S. Ghio
R.S. Ghio
Texas State Bar No. 00787531
**DISMUKE & WATERS, P.C.**
2000 E. Lamar Blvd, Ste. 500
Arlington, Texas 76006
Tel.: 817-277-2077

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was served on Defendant's counsel via electronic mail on September 18, 2020.

/s/R.S. Ghio
R.S. Ghio