IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAMERON MCCRARY, SCHELDON WILLIAMS, ASHLEY WASHINGTON, SHANIQUA RISCHER, JONATHAN DAVIS, PABLO LUNA, JAMES TAYLOR, AND KERRY BILLINGS,<br><br>  Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020 INC.,<br><br>  Defendant. | CIVIL ACTION NO. 3:20-cv-01264-X |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER OR STAY

Defendant Mike Bloomberg 2020 Inc. (the "Campaign") moved to dismiss all of Plaintiffs' claims and alternatively asked that the Court transfer or stay this case under the first-to-file doctrine. For the reasons set forth below and in the Campaign's motion, the Court should dismiss Plaintiffs' claims with prejudice or, alternatively, transfer this case to the United States District Court for the Southern District of New York or stay it pending the outcome of the first-filed litigation.

**Table of Contents**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENTS AND AUTHORITIES................................................................................. 2

    A. Plaintiffs' allegations do not state a breach-of-contract claim............................... 2

        1. Plaintiffs pleaded no *facts* to support a plausible inference that the alleged promise to continue to pay them through November was supported by consideration. ....................................................................... 2

        2. Plaintiffs do not state a claim for breach of an alleged oral promise to employ them through November 2020. ................................................... 3

    B. Plaintiffs' promissory-estoppel claim fails as a matter of law................................ 4

        1. The express contract precludes their promissory-estoppel claim. ............. 4

        2. Plaintiffs cannot reasonably rely on purported oral promises contradicting the specific terms of the At-Will Agreements. ..................... 5

    C. Plaintiffs cannot state a fraud claim........................................................................ 6

        1. The economic-loss doctrine applies to Plaintiffs' fraud claim. .................. 6

        2. Plaintiffs' reliance on purported oral promises contradicting the language of a written agreement was unreasonable, requiring dismissal of their fraud claim.................................................................... 6

    D. The FLSA does not apply. ...................................................................................... 7

        1. The Campaign is not an FLSA-covered "enterprise." ................................ 7

        2. Plaintiffs did not engage in commerce and are not FLSA-covered individuals.................................................................................................... 8

    E. Because the cases substantially overlap, the first-to-file doctrine applies.............. 9

III. CONCLUSION.................................................................................................................... 10

## Table of Authorities

Page(s)

### Cases

*Anderson v. Hearts with Hope Found.*,
   713 F. App'x 278 (5th Cir. 2017) .................................................................................... 8

*Anyafulu v. EquiCredit Corp. of Am.*,
   664 F. App'x 410 (5th Cir. 2016) .................................................................................... 6

*Areizaga v. ADW Corp.*,
   No. 3:14-CV-2899-P, 2015 WL 13567554 (N.D. Tex. May 19, 2015) ...................................... 5

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
   590 S.W.3d 471 (Tex. 2019) ........................................................................................... 5

*BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*,
   No. 14-06-00986, 2008 WL 1991738 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) .......................................................................................................................... 5

*BP Am. Prod'n Co. v. Zaffirini*,
   419 S.W.3d 485 (Tex. App.—San Antonio 2013, pet. denied) ................................................. 6

*C3PO Int'l, Ltd. v. Dyncorp Int'l LLC*,
   No. 4:14–CV–564, 2015 WL 783691 (N.D. Tex. Feb. 24, 2015) .............................................. 5

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ...................................................................................... 9, 10

*Castranova v. Teknekron Infoswitch, Inc.*,
   No. Civ. A. 3:00-CV-0361, 2003 WL 22143793 (N.D. Tex. Aug. 18, 2003) ......................... 2, 3

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
   445 S.W.3d 716 (Tex. 2014) ........................................................................................... 6

*City of Clinton v. Pilgrim's Pride Corp.*,
   654 F. Supp. 2d 536 (N.D. Tex. 2009) .............................................................................. 5

*David J. Sacks, P.C. v. Haden*,
   266 S.W.3d 447 (Tex. 2008) ........................................................................................... 4

*DT Apt. Grp., LP v. CWCapital, LLC*,
   No. 3:12–CV–0437–D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012) .................................. 5, 6

*Duran v. Wong*,
   No. 4:11-CV-3323, 2012 WL 5351220 (S.D. Tex. Oct. 23, 2012) ............................................ 9

*Ebert v. Wells Fargo Mort., N.A.*,
   No. A-13-CV-638, 2014 WL 12478011 (W.D. Tex. Mar. 25, 2014) ........................................ 6

*Fortune Prod'n Co. v. Conoco, Inc.*,
  52 S.W.3d 671 (Tex. 2000) .................................................................................................. 4

*Garza-Selcer v. 1600 Pacific Subtenant, LLC*,
  No. 3:15-CV-03791-N, 2016 WL 11474103 (N.D. Tex. Aug. 30, 2016) ................................ 5

*Guyton v. Legacy Pressure Control, Inc.*,
  No. SA-15-CV-1075, 2016 WL 5794801 (W.D. Tex. Oct. 4, 2016) ................................. 9, 10

*Hathaway v. General Mills*,
  711 S.W.2d 227 (Tex. 1986) .................................................................................................. 3

*Hubbard v. Shankle*,
  138 S.W.3d 474 (Tex. App.—Fort Worth 2004, pet. denied) ................................................. 2

*In re Endeavour Highrise LP*,
  432 B.R. 583 (S.D. Tex. Bankr. 2010) ............................................................................... 2, 3

*Jacobs v. N.Y. Foundling Hosp.*,
  577 F.3d 93 (2d Cir. 2009) ..................................................................................................... 8

*Johnson v. Trump for President, Inc.*,
  No. 8:19-cv-00475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) ........................................ 8

*Johnston v. Kruse*,
  261 S.W.3d 895 (Tex. App.—Dallas 2008, no pet.) ........................................................... 2, 3

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
  546 S.W.3d 648 (Tex. 2018) .................................................................................................. 5

*Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm'l Mktg. Co. W.L.L.*,
  No. H-07-2684, 2008 WL 5114962 (S.D. Tex. Dec. 3, 2008) ................................................ 5

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
  393 F. Supp. 2d 1282 (M.D. Fla. 2005) .............................................................................. 7, 9

*Locke v. St. Augustine's Episcopal Church*,
  690 F. Supp. 2d 77 (E.D.N.Y. 2010) ...................................................................................... 7

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
  955 F. Supp. 2d 50 (D.D.C. 2013) .......................................................................................... 7

*Martin v. Bedell*,
  955 F.2d 1029 (5th Cir. 1992) ................................................................................................ 7

*Mercedes-Benz, LLC v. Carduco*,
  583 S.W.3d 553 (Tex. 2019) .................................................................................................. 5

*Montgomery County Hospital District v. Brown*,
  965 S.W.2d 501 (Tex. 1998) .................................................................................................. 4

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015) ................................................................................. 5, 6

*Rachal v. Reitz*,
   403 S.W.3d 840 (Tex. 2013) ..................................................................................... 4

*Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*,
   501 F. App'x 805 (10th Cir. 2012) ............................................................................ 9

*Stephens v. The Clipper, Inc.*,
   No. No. 3–91–1392, 1992 WL 163659 (N.D. Tex. Mar. 24, 1992) ........................... 4

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
   471 U.S. 290 (1985) ................................................................................................... 7

*Vanegas v. Am. Energy Servs.*,
   302 S.W.3d 299 (Tex. 2009) ..................................................................................... 3

*Walker v. Interfaith Nutr. Network, Inc.*,
   No. 14 CV 5419, 2015 WL 4276174 (E.D.N.Y. July 14, 2015) ........................... 7, 8

*Wirtz v. Columbian Mut. Life Ins. Co.*,
   380 F.2d 903 (6th Cir. 1967) ..................................................................................... 8

## Statutes

29 U.S.C. § 203(r) .......................................................................................................... 7, 8

29 U.S.C. § 203(r)(1) .......................................................................................................... 7

29 U.S.C. § 203(s) .............................................................................................................. 8

29 U.S.C. § 207(a)(1) .......................................................................................................... 9

## Regulations

29 C.F.R. § 779.214 ............................................................................................................ 8

## I. INTRODUCTION

In their response, Plaintiffs (1) concede that certain of their theories cannot succeed, (2) fail to point to allegations in their Second Amended Complaint to support each element of their claims, and (3) make a number of legally unsupported arguments. Specifically, Plaintiffs point to no allegations establishing that the alleged oral promises were supported by consideration. Plaintiffs further concede that the parol evidence rule bars their claim for breach of the alleged promise to employ them through November 2020 to the extent that it is premised on a promise made *before* they signed the At-Will Agreements. Any alleged oral promise made after they entered into such agreements suffers from the same failure to plead facts establishing consideration.

Next, because the parties do not dispute the *existence* of a written agreement, Plaintiffs cannot pursue a promissory-estoppel claim as a matter of law. Further, under controlling Texas Supreme Court authority, Plaintiffs cannot plausibly allege that they justifiably relied on purported representations that contradict the terms of the written At-Will Agreements. And the economic-loss doctrine bars Plaintiffs' fraud claim because they did not plead a fraudulent-inducement claim.

Finally, although Plaintiffs rely on formulaic recitations of the requirements coverage under the Fair Labor Standards Act ("FLSA"), they plead no *facts* from which the Court could infer that the Campaign was conducted for a business purpose such that it is a covered "enterprise." Nor do Plaintiffs plead facts to establish that they engaged in "commerce" by using the Internet or telephones for a commercial purpose such that they could establish individual coverage under the FLSA.

In the alternative, because Plaintiffs admit that there is substantial overlap between this case and a lawsuit previously filed in the Southern District of New York, the Court should transfer this case to that court or stay it pending the resolution of those proceedings.

## II.     ARGUMENTS AND AUTHORITIES

**A.     Plaintiffs' allegations do not state a breach-of-contract claim.**

1. <u>Plaintiffs pleaded no *facts* to support a plausible inference that the alleged promise to continue to pay them through November was supported by consideration.</u>

Plaintiffs' alternative breach-of-contract theory premised on their contention that the Campaign promised to pay them until the November election is unsupported by any factual allegations necessary to establish consideration—a required element. *See Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). Although Plaintiffs allege that the "promise was made in order to induce Plaintiffs not to abandon the failing campaign," Pls.' Resp. at 7 (Dkt. 23), the Second Amended Complaint's factual allegations do not support their argument. *See, e.g.*, SAC ¶ 25. Specifically, Plaintiffs do not plead that anyone with authority to do so promised them that the Campaign would continue to pay them through November *in exchange for* or *conditioned on* an agreement not to defect to another candidate's campaign. *See id.*

A purported unilateral promise (*i.e.*, a promise accepted by performance) is unsupported by consideration unless the promisor (here, the Campaign) requests some action by Plaintiffs in return. *See, e.g.*, *Johnston v. Kruse*, 261 S.W.3d 895, 899 (Tex. App.—Dallas 2008, no pet.); *In re Endeavour Highrise LP*, 432 B.R. 583, 652 (S.D. Tex. Bankr. 2010); *Castranova v. Teknekron Infoswitch, Inc.*, No. Civ. A. 3:00-CV-0361, 2003 WL 22143793, at *2 (N.D. Tex. Aug. 18, 2003).

Plaintiffs do not address the Campaign's legal authorities and instead cite cases discussing the statute of frauds and the fact that the at-will doctrine does not preclude employment-related agreements. *See* Pls.' Resp. at 8. But the Campaign did not rely on a statute-of-frauds defense and, in any event, the applicability of the statute of frauds is unrelated to Plaintiffs' failure to plead consideration. And although the Campaign agrees that the at-will employment doctrine does not *categorically* prevent employees and employers from entering into employment-related contracts, the Campaign never made such an argument. In any event, the at-will employment doctrine does

2

not eliminate the consideration requirement in a breach-of-contract claim. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (holding that where employer promised at-will employees a specified amount as of a future date if they were employed on that date, a valid unilateral contract was formed). Accordingly, the fact that Plaintiffs were at-will employees is irrelevant to whether they adequately alleged consideration.

Plaintiffs further rely on *Hathaway v. General Mills*, in which employees accepted their employer's decision to lower their commissions by continuing their at-will employment after receiving notification of the change. *See* 711 S.W.2d 227, 228–29 (Tex. 1986). But here, Plaintiffs allege that the contractual modification was a purported promise of pay to which they would not have otherwise been entitled, and such a unilateral promise is not supported by consideration unless the employer conditions it on continued employment. *See, e.g.*, *Johnston*, 261 S.W.3d at 899; *In re Endeavour Highrise LP*, 432 B.R. at 652; *Castranova*, 2003 WL 22143793, at *2.

In short, even after their third attempt at pleading, Plaintiffs did not plead facts from which the Court can infer a valid breach-of-contract claim based on the alleged promise of future pay.

2. Plaintiffs do not state a claim for breach of an alleged oral promise to employ them through November 2020.

Plaintiffs' primary breach-of-contract theory is that the Campaign promised to employ them through November 2020, but Plaintiffs do not dispute that the At-Will Agreements expressly state that they were at-will employees. *See* Pls.' Resp. at 11. Instead, they argue that the provision in their offer letters regarding the nature of their at-will employment was vague, rendering it unenforceable in light of the specific promise of continued employment. *See id.* at 10–11. As an initial matter, the offer letters were not "vague" and explicitly stated that either party "may terminate . . . employment at any time, with or without notice and with or without cause, for any reason or for no reason," and "no further payments by the organization to you will be due . …" *See* At-Will Agreements at 1 (App. 002, 017, 032, 047, 062, 077, 092, 107) (Dkt. 21). It is difficult to imagine

3

a clearer explanation of "at will" employment.

Notably, the law does not support Plaintiffs' argument that an oral promise about the nature of employment overrides a written employment agreement. Plaintiffs rely on *Montgomery County Hospital District v. Brown*, 965 S.W.2d 501 (Tex. 1998), in which the Texas Supreme Court held that the presumption of at-will employment under Texas law could only be overcome by an unequivocal indication of "a definite intent to be bound not to terminate the employee under clearly specified circumstances." *Id.* at 502. But that case did *not* involve a written agreement specifying that an employee was at-will that is purportedly contradicted by a subsequent oral statement.

Next, Plaintiffs implicitly concede that the parol evidence rule bars any purported oral contract entered into *before* they signed the At-Will Agreements. *See, e.g.*, *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008); *Stephens v. The Clipper, Inc.*, No. No. 3–91–1392, 1992 WL 163659, at *5 (N.D. Tex. Mar. 24, 1992). They instead argue that the parol evidence rule does not bar introduction of alleged oral promises made *after* the parties entered into the At-Will Agreements. *See* Pls.' Resp. at 11–13).

Although Plaintiffs allege that purported oral promises about continued employment were repeated after they began employment, SAC ¶ 19, they did not plead the essential elements of a breach-of-contract claim based on those purported promises. As described above, Plaintiffs plead no facts to establish that there was any consideration provided for any purported unilateral promise of guaranteed employment or payment, rendering their claim legally infirm.

**B.     Plaintiffs' promissory-estoppel claim fails as a matter of law.**

1. <u>Plaintiffs' admission that an express agreement exists precludes their promissory-estoppel claim.</u>

Under Texas law, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory[.]" *Fortune Prod'n Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *see also Rachal v. Reitz*, 403 S.W.3d 840, 848 (Tex. 2013).

4

Courts thus routinely dismiss promissory-estoppel claims if a plaintiff alleges the existence of an express contract governing the subject matter of the dispute and neither party disputes the existence of an agreement. *See, e.g.*, *Garza-Selcer v. 1600 Pacific Subtenant, LLC*, No. 3:15-CV-03791-N, 2016 WL 11474103, at *4 (N.D. Tex. Aug. 30, 2016); *Areizaga v. ADW Corp.*, 3:14-CV-2899-P, 2015 WL 13567554, at *2 (N.D. Tex. May 19, 2015).[1] Dismissal of Plaintiffs' promissory-estoppel claim thus is warranted because they pleaded—and the Campaign does not dispute—the existence of an express agreement governing their employment.

    2.    <u>Plaintiffs cannot reasonably rely on purported oral promises contradicting the specific terms of the At-Will Agreements.</u>

To state a promissory-estoppel claim, Plaintiffs must provide facts from which the Court could plausibly infer that their reliance on a purported oral promise was reasonable. *See, e.g.*, *Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm'l Mktg. Co. W.L.L.*, No. H-07-2684, 2008 WL 5114962, at *22 (S.D. Tex. Dec. 3, 2008); *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986, 2008 WL 1991738, at *2 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied). Texas state and federal courts repeatedly instruct that reliance on an oral promise is unreasonable where that promise is contradicted by a written agreement. *See Kellogg Brown & Root Int'l, Inc.*, 2008 WL 5114962, at *22; *DT Apt. Grp., LP v. CWCapital, LLC*, No. 3:12–CV–0437–D, 2012 WL 6693192, at *9 (N.D. Tex. Dec. 26, 2012).[2]

Here, the At-Will Agreements specify that either party could terminate the employment relationship at any time and that, "[u]pon any termination of [their] employment for any reason, *no further payments by [the Campaign] to [Plaintiffs] will be due*" other than accrued salary and

---

[1] *See also*, *e.g.*, *C3PO Int'l, Ltd. v. Dyncorp Int'l LLC*, No. 4:14–CV–564, 2015 WL 783691, at *5–6 (N.D. Tex. Feb. 24, 2015); *City of Clinton v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009).

[2] *See also*, *e.g.*, *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 499 (Tex. 2019); *Mercedes-Benz, LLC v. Carduco*, 583 S.W.3d 553, 558 (Tex. 2019); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658–59 (Tex. 2018). *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015).

benefits. At-Will Agreements (App. 002, 017, 032, 047, 062, 077, 092, 107) (emphasis added) (Dkt. 21). The At-Will Agreements further specify that "[n]o statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by" an authorized Campaign representative. *Id.* Plaintiffs offer no argument as to how their purported reliance on oral promises that directly contradict the language of the At-Will Agreements is justifiable, requiring dismissal.

**C.    Plaintiffs cannot state a fraud claim.**

    1.    The economic-loss doctrine applies to Plaintiffs' fraud claim.

Plaintiffs correctly recognize that the economic-loss doctrine does not apply to fraudulent-inducement claims; however, they pleaded a fraud claim and *not* a fraudulent-inducement claim. *See* SAC ¶¶ 64–67 (alleging a claim for "Fraud – All Plaintiffs"). A fraudulent-inducement claim has different elements than a fraud claim. *See BP Am. Prod'n Co. v. Zaffirini*, 419 S.W.3d 485, 505 (Tex. App.—San Antonio 2013, pet. denied). Because Plaintiffs pleaded a fraud—not fraudulent-inducement—claim, dismissal is proper under the economic-loss doctrine. *See, e.g.*, *Anyafulu v. EquiCredit Corp. of Am.*, 664 F. App'x 410, 413 (5th Cir. 2016); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

    2.    Plaintiffs' reliance on purported oral promises contradicting the language of a written agreement was unreasonable, requiring dismissal of their fraud claim.

In the face of binding authority holding that reliance on an alleged oral statement that contradicts the express language of a contract is unjustifiable *as a matter of law*, Plaintiffs erroneously argue that the reasonableness of their reliance is a fact issue. *See* Pls.' Resp. at 15–16. But courts recognize that reliance is unreasonable as a matter of law and will dismiss fraud claims at the motion-to-dismiss stage if the pleading reflects purported reliance on an oral statement that directly contradicts a written agreement. *See, e.g.*, *Ebert v. Wells Fargo Mort., N.A.*, No. A-13-CV-638, 2014 WL 12478011, at *5 (W.D. Tex. Mar. 25, 2014); *DT Apt. Grp., LP*, 2012 WL 6693192, at *9. Accordingly, there is no merit to Plaintiff's contention that this issue cannot be decided at the

motion-to-dismiss stage, and dismissal with prejudice is proper.

**D.     The FLSA does not apply.**

Although the "FLSA guarantees overtime pay to employees engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')," *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992), Plaintiffs do not plausibly plead FLSA coverage under either theory.[3]

  1.     The Campaign is not an FLSA-covered "enterprise."

Plaintiffs do not plead facts from which the Court can plausibly infer that the Campaign is an FLSA-covered "enterprise." The FLSA's definition of "enterprise" includes only "the related activities performed (either through unified operation or common control) by any person or persons *for a common business purpose . . . .*" 29 U.S.C. § 203(r)(1) (emphasis added). Non-profit entities' activities are not covered unless they "serve the general public in competition with ordinary commercial enterprises." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 299 (1985). The provision of goods or services for a fee does *not* require the conclusion that a nonprofit organization's activities have a "business purpose." *See, e.g.*, *Walker v. Interfaith Nutr. Network, Inc.*, No. 14 CV 5419, 2015 WL 4276174, at *3 (E.D.N.Y. July 14, 2015); *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 86–88 (E.D.N.Y. 2010); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 n.28 (M.D. Fla. 2005).

And vaguely alleging that the defendant engaged in competition with others is insufficient. *See, e.g.*, *Walker*, 2015 WL 4276174, at *3. In *Walker*, for example, the conclusory allegation that the defendants "routinely competed in the marketplace with other commercial enterprises" was

---

[3] Plaintiffs' contention that the Campaign admitted FLSA coverage is irrelevant and incorrect. First, FLSA coverage is a legal question that does not depend on the parties' representations. Second, vague references to ineligibility for overtime pay or an exemption from overtime requirements do not constitute admissions of FLSA coverage that overrides applicable law.

7

insufficient to plausibly establish that the defendants were an FLSA "enterprise." *Id.*

Plaintiffs next confuse 29 U.S.C. § 203 subsections (r)—which defines an "enterprise"—and (s)—which defines when an enterprise is "engaged in commerce or in the production of goods for commerce"—and erroneously argue that they establish enterprise coverage because they meet the test for when an enterprise is "engaged in commerce or in the production of goods for commerce." *See* Pls.' Resp. at 18. But, as shown above, because Plaintiffs have not plausibly alleged that the Campaign is an "enterprise" under subsection (r), they cannot meet the criteria of subsection (s), and the amount of the campaign's sales is irrelevant. *See* 29 U.S.C. §§ 203(r), (s).

Finally, Plaintiffs dispute that political organizations could be exempted from the FLSA. *See* Pls.' Resp. at 18, 20–21. Although neither the statute nor regulations address whether political organizations are covered by the FLSA, they specify that only activities performed for a "business purpose" are covered. *See* 29 U.S.C. § 203(r); 29 C.F.R. § 779.214. Thus, nonprofit organizations like the Campaign, which are founded for some purpose other than to conduct business, are not subject to the FLSA, except to the extent that they engage in activities that "compete in the marketplace with ordinary commercial enterprises." 29 C.F.R. § 779.214; *see also Anderson v. Hearts with Hope Found.*, 713 F. App'x 278, 280 (5th Cir. 2017) (per curiam); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009); *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967); *see also, e.g.*, *Johnson v. Trump for President, Inc.*, No. 8:19-cv-00475, 2019 WL 2492122, at *4 (M.D. Fla. June 14, 2019) (rejecting enterprise coverage for a political campaign, and questioning whether a campaign could ever be a covered enterprise because of a lack of "business purpose"). In sum, Plaintiffs' allegations fail to establish that the Campaign is a covered enterprise under the FLSA because it was not conducted for a "business purpose."

2.  <u>Plaintiffs did not engage in commerce and are not FLSA-covered individuals.</u>

Plaintiffs likewise do not establish that they are covered individuals under the FLSA because they do not plausibly plead facts from which the Court could infer that they were "engaged in

8

commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Plaintiffs contend that the FLSA applies because they "used the internet and telephones to communicate with Defendant's New York headquarters and other campaign employees daily" and "used campaign materials that were shipped to their offices across state lines." Pls.' Resp. at 22.

But the "mere use of goods that have traveled in interstate commerce is by itself insufficient to establish individual coverage under the FLSA." *Duran v. Wong*, 4:11-CV-3323, 2012 WL 5351220, at *3 (S.D. Tex. Oct. 23, 2012). And Plaintiffs' use of the telephone and Internet for *non-commercial* purposes is insufficient to establish individual FLSA coverage. *See Kitchings*, 393 F. Supp. 2d at 1285–86 (use of interstate communications to access the Internet to assist with charitable work not sufficiently commercial); *Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*, 501 F. App'x 805, 810 (10th Cir. 2012) (domestic violence shelter worker could not establish individual coverage by helping the shelter's residents obtain or upgrade cellular telephone service because she "provided that help as part of the charitable activities of" the shelter).

Here, Plaintiffs allege that their "daily job duties" consisted "almost exclusively" of trying to persuade voters or volunteers to support the Campaign. SAC ¶¶ 32, 34. Taking that allegation as true, their calls consisted of work performed in the course of providing tax-exempt political advocacy, which falls outside the scope of the FLSA and requires dismissal of their FLSA claims.

**E.      Because the cases substantially overlap, the first-to-file doctrine applies.**

Plaintiffs concede that this case and the first-filed litigation substantially overlap. According to the Fifth Circuit, once the Court determines that there is substantial overlap between the two cases, "it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed," and it should stay the second-filed case or transfer it to the first-filed court. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999).

Plaintiffs erroneously argue that the first-to-file doctrine does not apply because their action is an individual action and the first-filed case is a collective action, relying on *Guyton v. Legacy*

*Pressure Control, Inc.*, No. SA-15-CV-1075, 2016 WL 5794801 (W.D. Tex. Oct. 4, 2016). *See* Pls.' Resp. at 23–24. *Guyton* incorrectly concluded that an individual plaintiff's choice of forum overrode the need "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." 2016 WL 5794801, at *2. The court distinguished the situation in which an FLSA plaintiff chooses to proceed individually from a situation involving a later-filed collective action. *See id.* But there is no reason for such a distinction because the named plaintiffs in both cases would be deprived of their choice of forum. Indeed, the first-to-file doctrine always deprives at least one individual plaintiff (even in a class or collective action) of his or her choice of forum, but courts have concluded that the judicial interests of efficiency and avoiding inconsistent results nonetheless justify a transfer or stay. In short, the reasoning in *Guyton* is not persuasive.

In addition, *Guyton* ignores the Fifth Circuit's language in *Cadle Co.* that requires the court in the second-filed case to permit the court in the first-filed case to decide whether to allow both cases to proceed. *See Cadle Co.*, 174 F.3d at 605. Specifically, the Fifth Circuit instructed that "[o]nce the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, *it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed.*" *Id.* (emphasis added, alterations in original, and internal quotation marks and citation omitted). In short, once this Court determines that the cases substantially overlap—which Plaintiffs concede—the Court must allow the United States District Court for the Southern District of New York to determine whether to permit this case to proceed separately. *See id.*

### III.   CONCLUSION

The Campaign respectfully requests that, for the reasons set forth above and in the Campaign's motion, the Court dismiss Plaintiffs' claims with prejudice or, in the alternative, transfer or stay this case.

Dated: October 2, 2020.

Respectfully submitted,

*/s/ J. Meghan McCaig*
Greg W. Curry
State Bar No. 05270300
Greg.Curry@tklaw.com

J. Meghan McCaig
State Bar No. 24070083
Meghan.McCaig@tklaw.com

Dina McKenney
State Bar No. 24092809
Dina.McKenney@tklaw.com

Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (facsimile)

ATTORNEYS FOR DEFENDANT

11